KNOLL, Judge.
Yolanda Alston Tippett appeals a jury award of $20,519 for personal injuries she received in a rear end collision. The liability of the two motorists, Joe Lance Parker, Jr. and William Glenn Jarrell, and their insurers, Maryland Casualty Company (hereafter Maryland Casualty) and Trinity Universal of Kansas (hereafter Trinity Universal), for causing the accident is not contested.
Tippett contends that: (1) the jury’s award was grossly inadequate to compensate her for injuries which included a cervical strain, a herniated disc which required surgical intervention, hospitalization for de *695 pression, medical expenses totaling $35,-071.60, and loss of wages, past and future; and (2) the trial judge erred by allowing Trinity Universal to deposit its policy limits into the registry of the court without interest and admission of liability, and then allowing it to withdraw those sums not awarded under the jury verdict. We amend, and affirm as amended.
FACTS
On January 26, 1984, Tippett was involved in an automobile accident while she was a guest passenger in a vehicle owned by Billy Clifton and driven by Carol Clifton. The Clifton vehicle was traveling in a westerly direction on 1-210 near the 1-210 bridge in Calcasieu Parish when it was required to stop for a stalled vehicle owned by William McCoy. After stopping, the Clifton vehicle was rear-ended by a Ford Bronco driven by Joe Lance Parker. Subsequently, the Parker vehicle was rear-ended by an automobile operated by William Jarrell.
Tippett sued Parker and his insurer, Maryland Casualty, Jarrell and his insurer, Trinity Universal, Clifton and her uninsured/underinsured motorist carrier, State Farm Mutual Insurance Company (hereafter State Farm), McCoy and his insurer, Viking Insurance Company (hereafter Viking), and her own uninsured/underinsured motorist carrier, United Pacific Insurance Company (hereafter United Pacific). Prior to trial, Trinity Universal deposited its policy limits, $10,000, into the registry of the court. At the close of all testimony, the trial judge granted a directed verdict, dismissing Clifton, McCoy, and Viking. The jury then returned its verdict, finding Parker 60% at fault, Jarrell 40% at fault, and awarded Tippett $20,519 against Parker, Maryland Casualty, Jarrell and Trinity Universal. Tippett’s uninsured/underinsured claims against State Farm and United Pacific were dismissed.
MANIFEST ERROR
Tippett first contends that the jury's damage award was inadequate. She argues that either the jury did not find her low back ailments were causally connected to the automobile accident, or that it found them causally related and awarded a grossly inadequate sum.
In Mart v. Hill, 505 So.2d 1120 (La.1987), at pages 1127-1128, the Supreme Court summarized the applicable standard of review:
“Appellate courts may not disturb the fact findings of the trier of fact in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979). In Arceneaux, we posited a two part test for the appellate review of facts:
1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Arceneaux, 365 So.2d at 1333; B and L Associates, Inc. v. Crump, 369 So.2d 1094, 1095 (La.App. 1st Cir.1979).
Accordingly, if an appellate court concludes that the trial court’s factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Davis v. Owen, 368 So.2d 1052, 1056 (La.1979). Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions. See, e.g., Parker v. Rhodes, 260 So.2d 706, 717 (La.App.2d Cir.1972). An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact’s refusal to accept as credible uncon-tradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1150 (La.1979)....
*696 In a personal injury lawsuit, the test for determining the causal relationship between the accident and subsequent operations is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent operations were caused by trauma suffered in the accident. Villavaso v. State Farm Mut. Auto Ins. Co., 424 So.2d 536, 538 (La.App. 4th Cir.1982) ... Lawsuits cannot be decided on speculation or suspicion alone. Accord, Miller v. Miller, 226 La. 273, 76 So.2d 3, 4 (1954.)” (Footnotes omitted.)
The record shows that immediately after the accident, Tippett was treated at Cal-Cam Hospital for a mild neck injury and released. She worked at the DeQuincy Post Office the following day.
On January 31, 1984, Dr. Thomas B. Ford, an orthopedic surgeon, treated Tip-pett for complaints of pain in the right shoulder and arm, a popping sensation in the shoulder blade, and tiredness in the back part of her right upper arm in the area of the triceps. He treated her conservatively until April 4, 1984, with anti-inflammatory medication and physical therapy, and released her with a diagnosis of a cervical hyperextension injury related to the January 1984 automobile accident.
A chiropractor, Gary L. Bauer, treated Tippett for the first time after the accident on April 23, 1984. She complained of neck pain radiating into both shoulders, numbness in both arms, a popping sound in the right shoulder, and low back pain. Chiropractic x-rays showed rotation of the lumbar and cervical vertebra, 4th and 6th respectively, as well as some vertebral malpo-sitioning in those same areas. Tippett told him the neck and shoulder pain was present from the time of the accident, and that the back pain developed later. He characterized her initial low back pain as minor, and manipulated her spine in the lumbar and cervical regions; on subsequent visits he repeated the spinal manipulations. As of August 31, 1984, Dr. Bauer thought Tippett’s back had improved, and he did not see her again until October 20, 1984; on that occasion he did not have to manipulate the lumbar region.
Tippett returned to Dr. Bauer on November 5, 1984, when she complained of low back pain. On that day, or thereabout, Tippett slipped in the shower at her home. Tippett testified that although she slipped and caught herself on the handrail, she did not fall. Nevertheless, this intervening occurrence was memorialized in Tippett’s own hand when she wrote on November 5, 1984, in an absence report filed with the post office, “[Fjell in shower, hurt my arm and hip.”. At this November 5 treatment, Dr. Bauer noted that for the first time he found muscle spasms in Tippett’s lower back.
Dr. Bauer opined that the January 1984 automobile accident caused Tippett’s low back problems, and that she had spinal instability because of the accident. From April to November 1984, Dr. Bauer did not characterize Tippett’s symptomatology as indicative of a ruptured disc, but he remarked that her condition deteriorated after November. Although he opined that Tippett was totally disabled from work between April and November 1984, Tippett testified that she continued to work as a postal clerk throughout that time.
Dr. Clark Gunderson, an orthopedist, saw Tippett on June 19, 1984, for neck and low back pain. After examination of Tip-pett’s neck and lower back revealed no objectively determinable abnormality, Dr. Gunderson opined that she had a cervical and lower back spraining type injury.
On August 21, 1984, Dr. Bobby G. Nev-ils, an obstetrician/gynecologist, saw Tip-pett for her annual physical examination, and said that she complained of excessive weight gain, muscular skeletal pain, and an acid peptic disorder. In December 1984 he again saw Tippett; however, because of her strong suicidal verbalization and her strong ambivalence towards the possibility of being pregnant, he referred her to Dr. Harper Willis for psychiatric consultation.
Dr. Willis hospitalized Tippett in December 1984 in Lake Charles Memorial Hospital for depression. Because Tippett still complained of back problems, Dr. Willis *697 asked Dr. Gunderson to examine her. On December 10, 1984, a myelogram was performed which showed an amputation of the S-l nerve root on the left side, opposite from where Tippett’s complaints of pain were, and was suggestive of a herniated disc. Dr. Willis discharged Tippett by the end of December, and Dr. Gunderson continued to treat Tippett conservatively as an out-patient until February 1985 when he released her to return to work without restrictions.
Based on Tippett’s history, Dr. Gunder-son related her June and December back problems to the January 1984 automobile accident, but said that if she suffered an intervening accident it could possibly also cause her lower back disc problems. With regard to the slip in the shower by Tippett, Dr. Gunderson opined that if Tippett did not suffer more pain after that occurrence, then he did not think that it was the cause of her lower back injury.
From December 31, 1984, through the spring of 1985 Tippett consulted her chiropractor, Dr. Bauer. He testified that he began to suspect disc involvement in Tip-pett’s lower back pain, but ultimately concluded that she had persistent back instability.
On May 5, 1985, Tippett consulted Dr. William F. Foster, a neurosurgeon, for complaints of pain in the right lower extremity radiating down into the right leg, as well as cervical pain with radiation from the neck down into the fingers. His examination revealed a positive straight leg raising test, increased pain by ankle dorsiflex-ion, and a diminished pinprick response along the L-5 dermatome in the right lower extremity. A repeat myelogram performed on May 5, 1985, proved inconclusive. A follow-up discogram showed Tippett had a herniated disc at the L-5, S-l level. Dr. Dean Moore, a neurosurgeon and colleague of Dr. Foster, then performed a laminecto-my in May of 1985, to remove Tippett’s L-5, S-l disc.
Dr. Foster stated that as of January 30, 1986, Tippett reached her maximum medical recovery. He assigned her a 10% to 15% permanent partial disability. As of trial, neither Dr. Foster nor Dr. Moore had released Tippett to return to work.
Dr. Foster opined that, assuming the accuracy of Tippett’s history, without an intervening cause, the January 1984 auto accident was the cause of her disc abnormality. During her treatment, Tippett testified that she did not inform Dr. Foster of her treatment by Dr. Ford or of the slip in the shower.
In the case sub judice, Tippett contends that she made complaints of low back pain: to her chiropractor, Dr. Bauer, on April 23, 1984; to her orthopedist, Dr. Gunderson, on June 19, 1984; and, to her gynecologist, Dr. Nevils on August 21, 1984. She further argues that on this basis and on the testimony of Dr. Foster, her treating neurosurgeon, the medical evidence preponderates that the January 1984 auto accident was the cause of her low back injury.
The defendants contend that despite the testimony Tippett relies on, the jury was not manifestly erroneous. They point out that Dr. Ford, Tippett’s orthopedist who treated her for the first six weeks after the accident, testified that although she complained of ankle pain shortly after the accident, she never complained of low back pain during the time he treated her. They also stress that the jury heard testimony from Tippett and her co-workers that she continued to perform her duties as a postal clerk until December 1984. Additionally, they point out that the record shows that the jury heard testimony that after November Tippett’s condition steadily deteriorated, and that Tippett did not relate the shower incident to Dr. Foster when he initiated treatment of her in May of 1985.
Tippett refers us to the analysis used in the recent Supreme Court decision in Mart, supra, for support of her position that the January 1984 accident was the cause of her lumbar disc problems. Although we ascribe to the views expressed in Mart, upon close examination we conclude that it is factually distinguishable. In Mart, the injured plaintiff immediately complained to doctors of low back pain. In the present case Tippett did not complain to her doctors of lower back pain until April, approximately three months after the automobile acci *698 dent. Moreover, unlike Mart where the plaintiffs vehicle was rear-ended by a loaded tractor-trailer weighing approximately 77,000 pounds, in the present case a smaller passenger vehicle, not traveling at a high speed, rear-ended the Clifton vehicle. Furthermore, Tippett’s shower incident, an intervening element not present in Mart, was placed before the jury for evaluation and assessment.
In the case sub judice the jury had the full spectrum of testimony before it regarding Tippett’s back injury, and as trier of fact had to determine the extent and severity of injury attributable to the January 1984 automobile accident. Based upon the amount of damages the jury awarded, we conclude that the jury did not attribute Tippett’s back injury to the automobile accident. After thoroughly reviewing the record, we cannot say that the jury’s determination of this issue was clearly wrong. For this reason, we do not find the jury’s assessment of damages manifestly erroneous or inadequate.
TRINITY’S DEPOSIT OF ITS POLICY LIMITS
Tippett next contends that the trial judge improperly allowed Trinity Universal, Jarrell’s liability insurer, to deposit its policy limits into the registry of the court prior to trial without admitting liability, and further permitted it to withdraw any excess after rendition of the judgment without incurring court costs or legal interest.
LSA-C.C.P. Art. 4652 provides, in pertinent part, as follows:
“No claimant may be impleaded in a con-cursus proceeding whose claim has been prosecuted to judgment. No person claiming damages for wrongful death or for physical injuries may be impleaded in a concursus proceeding, except by a casualty insurer which admits liability for the full amount of the insurance coverage, and has deposited this sum into the registry of the court.”
See Fidelity & Guar. v. Succession of Smith, 525 So.2d 348 (La.App. 1st Cir. 1988).
In the case sub judice, Trinity Universal deposited its $10,000 check, representing the maximum amount payable per person for bodily injury, into the registry of the court on June 17, 1986. In its motion, Trinity Universal alleged that it offered the $10,000 to Tippett in settlement of all her claims asserted against it and its insured, but she rejected that offer. Therefore, it wished to deposit the policy amount into the registry of the court to avoid liability for the payment of future legal interest.
Trinity Universal did not participate in the jury trial, and although it and its insured were cast 40% at fault for Tippett’s injuries, it has not filed a responsive brief in this court concerning this issue.
The judgment of the trial court cast Trinity Universal and its insured with 40% fault, limited Trinity Universal to the payment of legal interest from the date of judicial demand until June 17, 1986, and allocated all court costs to Maryland Casualty. We note that the record is void of any documentation that Trinity Universal was allowed to withdraw any excess funds it deposited into the registry of the court.
In essence we are asked to determine the effect of Trinity Universal’s deposit into the registry of the court on its liability for legal interest and court costs. Strictly applying the provisions of LSA-C.C.P. Art. 4652, we find that the trial court erred in limiting Trinity Universal’s liability for legal interest and court costs. Nowhere in the record or in its motion to deposit its policy limits does Trinity Universal unconditionally admit its liability to Tippett.
For the foregoing reasons, the judgment of the trial court is amended to cast Trinity Universal liable for legal interest on its share of the judgment from May 8, 1984, until paid, and for 40% of all costs of the proceedings in the trial court. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed two-thirds to Tippett and one-third to Trinity Universal.
AMENDED AND AFFIRMED AS AMENDED.