811 So.2d 116 (2002)
Anna Bell DINETT, Leroyal Dinett, Leroy Dinett, Michelle Dinett Dufour, and Gary Dinett,
v.
LAKESIDE HOSPITAL.
No. 2000-CA-2682.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 2002.
C.A. Fleming, III, Fleming & Rosamond, L.L.P., Metairie, LA, for Plaintiffs/Appellants.
*117 Celeste Brustowicz, Meredith M. Miceli, Burglass & Tankersley, L.L.C., Metairie, LA, and Kathleen F. Drew, Ronald J. Sholes, Adams and Reese, for Defendant/Appellee (Lakeside Hospital).
Peter Sperling, Kathryn M. Caraway, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Defendant/Appellee (The Blood Center).
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR.
MURRAY, Judge.
In this civil action for personal injuries, the trial court granted a defense motion to exclude certain expert testimony based upon the failure to comport with the admissibility standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993), and further found that, absent the excluded testimony, the plaintiffs had no evidence of causation. Therefore, the court granted a motion for summary judgment of dismissal, from which the plaintiffs appeal. We reverse for the reasons that follow.
Anna Bell Dinett was born in June 1941. In October 1973, shortly after giving birth to her third child, complications necessitated her admission to Lakeside Hospital for an emergency blood transfusion and total hysterectomy. In May 1995, she was diagnosed with liver damage resulting from the Hepatitis C virus. Mrs. Dinett, her husband and their three adult children filed this suit shortly thereafter against Medical Center of Baton Rouge, Inc., d/b/a Lakeside Hospital ("Lakeside Hospital"), which then filed a third-party demand for indemnity and/or contribution against the alleged supplier of the transfused blood, The Blood Center for Southeast Louisiana ("The Blood Center").
On January 28, 1999, Lakeside Hospital and The Blood Center filed, inter alia, a joint motion in limine seeking to exclude "certain opinion testimony of plaintiffs' treating physicians (present and former)." In the accompanying memorandum, it was argued that because there was no reliable scientific basis for the physicians' opinions that Mrs. Dinett's Hepatitis C was caused by the 1973 blood transfusion, such testimony would not be admissible under the Daubert/Foret standards. A joint motion for summary judgment was also filed, asserting that dismissal of the plaintiffs' claims was required because without any expert opinion, there was no admissible evidence of causation.
In opposition, Mrs. Dinett argued that it was undisputed that Hepatitis C is a bloodborne pathogen, and noted that the experts and medical literature indicated that ninety percent of those with the disease acquired it from a blood transfusion administered prior to 1986. Thus, although it could not be said beyond all doubt that the transfusion caused her infection, the standard medical methodology of relying upon patient history established that it was more probable than not. Therefore, Mrs. Dinett asserted that the expert testimony is admissible under Daubert/Foret, leaving a decision regarding the weight of the evidence for the jury.
Prior to the presentation of evidence on the motion, it was stipulated that Mrs. Dinett's medical history included three surgeries, an adenoidectomy, tonsillectomy and an appendectomy, prior to her adulthood; hospitalization for a miscarriage and D & C in 1968; a thyroidectomy in 1971; that she had given birth to three children prior to her transfusion; surgical removal of her ovaries in 1976 and 1982; and a carpal tunnel release in 1988. Except for *118 the 1971 thyroidectomy, there are no medical records available for any of the procedures prior to 1973. It was further stipulated that due to the passage of time, the identity of the donor of the blood given to Mrs. Dinett is unknown.
In addition to an affidavit regarding the testing of blood given to another individual in 1980, the movers presented the depositions of two of Mrs. Dinett's treating physicians, Dr. Fredric G. Regenstein and Dr. Dasarathy Srinivas. In support of the opposition, plaintiffs also filed the depositions of most of the other treating physicians at issue, as well as numerous articles from medical journals.
Lakeside Hospital and The Blood Center offered the only live testimony on the Daubert motion, that of Dr. S. Gerald Sandler, a board certified internist who practices hematology and transfusion medicine and is Director of Georgetown University Medical Center's blood bank. Dr. Sandler was accepted by the court as an expert in the collection and transfusion of blood and blood products, "including the prevention, detection, diagnosis and clinical aspects of viral hepatitis."
Dr. Sandler testified that a person contracts Hepatitis C when "a miniscule amount of blood from a person who has it" gets into their system. While other forms of blood-borne hepatitis generally cause recognizable symtoms within a few months of transmission, those who contract Hepatitis C usually show no signs of serious illness until years or even decades later. Because of this latency period, it was not recognized as a distinct disease until the mid-1970s, and although blood banks began using a "surrogate" test for it in 1986,[1] there was no specific test for the Hepatitis C virus until 1990. Consequently, the ability to positively determine whether a blood donor carried the virus and/or whether a donee contracted the virus from a transfusion did not exist until 1990.
Dr. Sandler further testified that by questioning those who have Hepatitis C or another blood-borne disease, the Centers for Disease Control has identified a list of risk factors, but the list is intended only for screening purposes. Because the determination of risk factors is based solely upon the honesty and accuracy of the patient's memory, they are not always reliable. More importantly, because the CDC did not attempt to confirm a patient's report of transmission through a blood transfusion by tracking down and testing the donor's blood, the medical history is not an indicator of causation. In fact, it is now known that this virus could have been spread through routine immunizations and other minor medical procedures as late as the 1970s, when sterilization still involved merely applying alcohol to an instrument or needle before it was used on another patient. Therefore, Dr. Sandler concluded that there was no way he, or anyone, could state with any probability that Mrs. Dinett contracted the Hepatitis C virus from her 1973 blood transfusion.
In Daubert, supra, the United States Supreme Court interpreted Federal Rule of Evidence 702, which is identical to Louisiana Code of Evidence article 702, relating to the admissibility of expert testimony.[2] The Court held that when deciding *119 whether such testimony is admissible, the trial court has a gatekeeping role, which requires it to make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592, 113 S.Ct. 2786. The Court then enumerated four factors that the trial court may consider in performing this gatekeeping function, including whether the expert's technique had been subjected to peer review and/or publication, the known or potential rate of error, the existence of standards controlling the technique's operation, and finally, the refutability or testability of the technique. Id. at 594-595, 113 S.Ct. 2786. The Daubert standard was adopted by the Louisiana Supreme Court in State v. Foret, supra.[3]
It is important to note that Daubert comes into play only when the methodology used by the expert is being questioned. As the Louisiana Supreme Court recently stated in overturning a summary judgment: "Because the legitimacy of the expert's methodology, rather than the application of that methodology to the instant circumstances, has been challenged, the [expert's] affidavit must be considered pursuant to the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993), prior to ruling on the motion for summary judgment." Blank v. Sid Richardson Carbon & Gasoline Co., XXXX-XXXX (La.6/2/00), 762 So.2d 1115.
In the instant case, it is not the experts' methodology that is being attacked. It is undisputed that blood transfusions, especially those received prior to 1990, when screening began, can be a source of acquiring the Hepatitis C virus. Mrs. Dinett's medical history reflects that she received such a transfusion. What the defendants sought to exclude by means of their Daubert motion was the opinion of certain physicians who have concluded, based on Mrs. Dinett's medical history, that her receipt of a blood transfusion in 1973 probably caused her to be infected with the virus. It is a routine and well established practice for a physician to give opinion testimony as to the cause of a patient's condition based upon the history provided by the patient. In the instant case, however, the trial court excluded the testimony on the sole basis of the testimony of another physician, Dr. Sandler, that because it is scientifically impossible to determine with any certainty that the transfusion was the source of Mrs. Dinett's infection, any opinion to that effect is merely a "guess."
We find the trial court erred in excluding the testimony on this basis. Daubert is inapplicable to the instant situation because it is not the experts' methodology that is being questioned; rather, it is the conclusions they reached in applying that methodology to the instant facts. Given that a pre-1990 blood transfusion is a known risk factor for acquiring Hepatitis C and Mrs. Dinett's history of having received such a transfusion (as well as having undergone other surgical procedures which also could have exposed her to Hepatitis C), there is nothing inherently unreliable about a physician testifying as to the probability that the transfusion caused her infection.
*120 The plaintiff's burden in a civil case such as the instant one is to prove that defendant's conduct "more probably than not" caused plaintiff's condition. If the burden were to prove each element of the case beyond a reasonable doubt, as in a criminal matter, the testimony of Dr. Sandler that such proof of causation is scientifically impossible arguably would merit the granting of summary judgment in favor of defendants. In the instant case, however, the exclusion of the plaintiffs' experts at the summary judgment stage improperly usurps the function of the jury at trial, which is to weigh the opinions of those experts against that of Dr. Sandler in determining whether the plaintiffs have met their burden of proving causation.
In Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, the Court discussed the use of the Daubert/Foret standards in the context of a motion for summary judgment in a civil case. The Court reiterated "several important underlying principles," including: (1) the trial judge cannot make credibility determinations on a motion for summary judgment; (2) the court must not attempt to evaluate the persuasiveness of competing scientific studies, and in performing its gatekeeping analysis, must "focus solely on the principles and methodology, not on the conclusions they generate;" (3) the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion;" and, (4) because summary judgments deprive the litigants of their opportunity to present their evidence to a jury, they should be granted only when the evidence, including admissible expert opinion evidence, establishes that there is no genuine issue of material fact in dispute. Id. at pp. 16-17, 755 So.2d at 235-236.
In the instant case, we find that the trial court improperly applied Daubert/Foret to exclude the plaintiffs' experts opinions evidence, which evidence raises a genuine issue of material fact for trial. Accordingly, we reverse the trial court's judgment granting defendants' Daubert motion, granting the motion for summary judgment in favor of defendants, and dismissing the third party demand of Lakeside Hospital against The Blood Center; we remand the matter to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] A surrogate test was explained to be one for which a positive result "has a strong association" with the condition but does not directly identify it.
[2] Federal Rule of Evidence 702 and La. C.E. art. 702 each provide:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
[3] Foret is a criminal (attempted sexual molestation of a juvenile) case in which the Court held inadmissible the testimony of a psychologist who based his opinion that abuse had occurred on the alleged victim's exhibition of "Child Sexual Abuse Accommodation Syndrome."