857 So.2d 20 (2003)
Vorsha TADLOCK, Individually, and for and on Behalf of his Minor Daughter, Vorchall Daman
v.
William TAYLOR, Southern United Fire Insurance Company and, Louisiana Department of Transportation and Development.
No. 2002-CA-0712.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2003.
Rehearing Denied November 5, 2003.
*24 Louis B. Merhige, Metairie, LA, and Richard A. Tonry, Kim Cooper Jones, Michael C. Ginart, Jr., Richard A. Tonry II, Law Office of Tonry & Ginart, Chalmette, LA, for Vorsha Tadlock, Individually and on Behalf of his Minor Daughter, Vorchall Daman.
Peirce A. Hammond II, Leake & Andersson, L.L.P., New Orleans, LA, for Southern United Fire Insurance Company and William Taylor.
C. Devin Fadaol, Lobman, Carnahan, Batt, Angelle & Nader, New Orleans, LA, for State Farm Mutual Automobile Insurance Company, in its Capacity as the UM Insurer of Cynthia Villivaso.
Richard P. Ieyoub, Attorney General, David P. Bains, Lance S. Guest, Assistant Attorney General, LA Department of Justice, Litigation Division, New Orleans, LA, for State of Louisiana, Through the Department of Transportation and Development.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
This case arises from injuries sustained by plaintiff, Vorsha Tadlock, when an automobile driven by defendant, William Taylor, struck him. Mr. Tadlock filed suit on behalf of himself and his alleged daughter Vorchall Daman for damages and loss of consortium, respectively. The jury found defendant William Taylor 70% liable and the Louisiana Department of Transportation 30% liable for Mr. Tadlock's injuries. The jury did not award Vorchall Daman damages for loss of consortium, but the trial judge granted plaintiffs' motion for JNOV, awarding Vorchall Daman $10,000 in damages for loss of consortium. In this appeal, the Louisiana Department of Transportation alleges several assignments of error, including the trial judge's grant of the JNOV. Plaintiffs also appeal the amount of damages awarded for loss of consortium, the trial court's determination that Mr. Tadlock was not entitled to UM coverage, and the payment of costs under solidary liability. For the reasons outlined below we affirm the trial court on all assignments of error except the JNOV awarding damages for loss of consortium, which we reverse.
FACTS AND PROCEDURAL HISTORY
On Sunday, October 9, 1994, at approximately 1:30 a.m., William Taylor ("Taylor") lost control of his van, crossed the center stripe of Louisiana Highway 46, struck the driver side of a Toyota SUV parked in the lot of the Jazzy J's Club, and subsequently struck Vorsha Tadlock ("Tadlock"), who was standing next to the doorway of the club. The blow rendered Tadlock unconscious.
*25 Tadlock sustained severe injuries, which included two large open comminuted fractures of both lower legs, involving the tibia and fibula, a laceration to his chest and face, and injuries to his teeth. Tadlock's right leg was amputated below the knee. He had several skin grafts and his left leg was severely disfigured.
Tadlock, individually and on behalf of his alleged minor daughter, Vorchall Daman, filed suit against Taylor, his insurance company, Southern United Fire Insurance Company, and the Louisiana Department of Transportation and Development ("DOTD"), on May 18, 1995. His petition included a claim for loss of consortium for his alleged daughter. Plaintiffs later supplemented and amended their petition to sue Cynthia Shaw Villivaso, the owner of the Toyota SUV; Villivaso's insurer, State Farm Mutual Automobile Insurance Company; St. Bernard Parish; Jack Stephens as Sheriff of St. Bernard Parish; J'anet Warren, the owner of Jazzy J's Club; and State Farm's underinsured motorist policy for Cynthia Shaw Villivaso; Randazzo Property Corporation, the owner of the building in which Jazzy J's club was located; and Randazzo's insurer, Scottsdale Insurance Company. Before trial, plaintiffs settled and dismissed Sheriff Jack Stephens, St. Bernard Parish, and Randazzo and its insurer Scottsdale insurance.
A jury trial on the merits was held and a verdict was returned on May 8, 2001, in favor of Tadlock, and against defendants Taylor and DOTD in the sum of $2,010,000, plus legal interest from the date of demand. The jury found Taylor 70% at fault and DOTD 30% at fault. The jury did not find in favor of Tadlock's daughter, Vorchall Daman, for the loss of consortium claim; and the jury found no liability as to State Farm and J'anet Warren, and no liability as to State Farm as the UM carrier. Plaintiffs requested a Judgment Notwithstanding the Verdict, which the trial judge granted, and awarded Vorchall Daman $10,000 for loss of consortium.
DISCUSSION
DOTD'S ASSIGNMENTS OF ERROR
In its first assignment of error, DOTD asserts the trial court abused its discretion when it failed to perform its "gatekeeping" function under article 702 and 403 of the Louisiana Code of Evidence and conduct a "Daubert/Kumho" hearing regarding the methodology used by the plaintiffs' expert Stephen Estopinal.
As to the issue of who should or should not be allowed to testify as an expert, it is very well established in the case law that the trial court has discretion and will not be reversed on appeal absent clear error. Ballam v. Seibels Bruce Ins. Co., 97-1444, p. 4 (La.App. 4 Cir. 4/1/98), 712 So.2d 543, 546 (citing Mistich v. Volkswagon of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073, 1079). The trial court's decisions in applying the new reliability standards for expert testimony are also subject to reversal only for abuse of discretion or manifest error. Ballam, 97-1444, p. 4, 712 So.2d at 546 (citing Williamson v. Haynes Best Western of Alexandria, 95-1725 (La.App. 4 Cir. 1/29/97), 688 So.2d 1201, 1241). In Daubert v. Merrellr-Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court replaced the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. The Louisiana Supreme Court adopted the Daubert analysis in State v. Foret, 628 So.2d 1116, 1121 (La.1993). It is important to note Daubert comes into play only when the methodology used by the expert *26 is being questioned. Dinett v. Lakeside Hospital, 2000-2682, p. 3 (La.App. 4 Cir. 2/20/02), 811 So.2d 116, 119. A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and this includes the determination of how much and what kind of education and/or training adequately qualify an individual as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous. Abshire v. Wilkenson, XXXX-XXXX (La.App. 3 Cir. 5/30/01), 787 So.2d 1158. The court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. Keener v. Mid-Continent Casualty, 01-1357, p. 12 (La.App. 5 Cir. 4/30/02), 817 So.2d 347, 354-355. As with all other admissible evidence, expert testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Id. (citing Daubert, 509 U.S. at 596, 113 S.Ct. at 2798). As the jurisprudence indicates, there is a crucial difference between questioning the methodology employed by an expert witness, and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings Daubert into play.
Plaintiffs' expert Stephen Estopinal supplied testimony regarding the size of DOTD's right of way. DOTD alleges that Stephen Estopinal ("Estopinal"), an expert in land surveying and civil engineering, erroneously surveyed the section of highway relevant to this case. DOTD filed a motion in limine to prevent the admittance of Mr. Estopinal's testimony or surveys. The trial court denied defendant's request to conduct a Daubert/Kumho hearing. The trial court stated:
Deny the motion. I think this goes to the weight. I don't think this is a Daubert matter. This guy is qualified. He's testified as an expert in this judicial district a number of times.
DOTD objected to the trial court denial of their motion, and that objection is contained in the record; however, DOTD did not seek supervisory review of the decision by this Court.
The section in controversy is a portion of lot 3, square "E" of the Highland Subdivision in St. Bernard Parish. DOTD further argues that Estopinal's findings that its right of way extended into lot 3, are contrary to the deed recorded in the conveyance records of St. Bernard Parish, which did not include lot 3 in DOTD's right of way. DOTD argues that Estopinal's testimony fails the Daubert test because he did not offer any monuments of title, any physically conducted independent survey, or proof of acquisitive prescriptive easement by DOTD over any portion of lot 3, Square "E". DOTD's arguments on this point are not persuasive. Estopinal surveyed the area in question several times using standard surveying techniques of measuring out fifty feet from either side of the center of the roadway to determine the DOTD's right of way.
As evidenced by the testimony and argument, DOTD's exception to Estopinal's testimony had little to do with the methodology he employed in conducting his surveys, but with his ultimate conclusions. In fact the DOTD did not point to specific problem it had with Estopinal's surveying methodology, or point to an alternative surveying methodology which would be considered more acceptable by the court and the surveying community at large. The trial court was correct in finding that Estopinal was a qualified expert under Daubert on its own based on Estopinal's exceptional experience in surveying St. *27 Bernard Parish and in testifying previously before the court as a expert. It was within the discretion of the trial court to deny DOTD's motion in limine to conduct a Daubert hearing, and there is no evidence in the record with regard to Estopinal's testimony that reveals the trial court's judgment to be manifestly erroneous. Moreover, we find no error in the trial court allowing subsequent plaintiffs' experts to use Estopinal's conclusions in formulating their own opinions.
In its second assignment of error, DOTD asserts the trial court abused it discretion when it allowed into evidence an interdepartmental memorandum regarding the contingencies of maintenance to non-paved shoulders, because the shoulders of highway sub judice are paved.
DOTD argues that since this case deals with alleged potholes and rutting, and drop-offs within the right of way of a paved highway, the interdepartmental memorandum was not relevant to establish liability of DOTD and only served to confuse the jurors. DOTD adds that the trial court's admission of testimony regarding American Association of State Highway Officials ("ASHTO") standards and clear recovery zones was prejudicial because Louisiana Highway 46 was built in approximately 1935, before the State of Louisiana's adoption of the ASHTO standards in 1968. Furthermore, the DOTD argues that the trial court erred in admitting photographs taken of the highway in question by plaintiffs' expert James Clary, Sr., an expert in highway design, safety, signing, and maintenance. DOTD argues that the photographs were prejudicial and irrelevant because they did not depict the area as it existed at the time of the accident, there was no reliable testimony as to what area the pictures depict, or that the Taylor van crashed in the area depicted in the pictures.
All relevant evidence is generally admissible. La. C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more probable or less probable than it would be without the evidence that which tends to show any fact of consequence to the charge. La. C.E. art. 401; Pattison v. Valley Forge Ins. Co., 599 So.2d 873, 877 (La.App. 4th Cir.1992). Relevance of evidence is determined by the purpose for which it is offered. See State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984). Whether evidence is relevant is within the discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of clear abuse of his discretion. Pattison, 599 So.2d at 877.
However, relevant evidence may be excluded if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. Under La. C.E. art. 403, unfair prejudice is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."
The trial court admitted the interdepartmental memorandum on the basis that it was relevant to illustrate DOTD's general policy regarding highway maintenance. The interdepartmental memorandum acknowledges that DOTD "is constantly the object of litigation because of low shoulders, edge rutting or drop-offs along the roadway surface." While the memorandum mentions the Maintenance Standards Manual and its suggested repair schedule with regards to non-paved shoulders, it outlines general maintenance standards as follows:
Any shoulder, drop-off or edge rut should be repaired in the course of routine *28 maintenance and should this condition even approach the three (3) inch depth, it should be repaired on a priority basis. When this condition approaches five (5) inches in depth, it should be repaired immediately, not wait until the next day but work people on overtime if necessary ... These conditions must receive attention in order to reduce the State's liability.
The memorandum further discusses experimenting with solving recurring low shoulder problems. It is evident from our review that this memorandum was correctly admitted and relevant because it demonstrates DOTD policy on roadway maintenance for the alleged roadway defects that are at issue in this case. We disagree with the DOTD's assertion that this memorandum only addresses maintenance of non-paved shoulders. The memorandum clearly prescribes maintenance schedules for any roadway with the defects described above.
Likewise, the trial court admitted the ASHTO standards and photos taken by Mr. Clary on the basis that it helped develop his expert opinion. Mr. Clary used these items to assist in his expert testimony about the conditions of the highway in question and the responsibility of the DOTD. Our review of the record indicates that the evidence in question was relevant for the purpose for which it was offered under the law and was not unduly prejudicial as defined by La. C.E. art. 403. Our review further reveals that the evidence was not of such a quality as to suggest the jury made its decision on an improper basis. Further, we find that DOTD was given ample opportunity to address and give perspective to the aforementioned evidence through cross-examination. Therefore, given the broad discretion afforded trial courts in admitting evidence, we find the trial court did not err.
It its third assignment of error, DOTD asserts the trial court committed manifest error when it struck its jury charges, and improperly read charges to the jury.
In considering an argument of improper jury instruction, the court should consider the entirety of the charges and determine if they adequately provide the correct principles of law applicable to the issues as framed by the pleadings and the evidence, and whether they provide adequate guidelines for the jury. Clark v. Jesuit high School of New Orleans, 96-1307, p. 7 (La.App. 4 Cir. 12/27/96), 686 So.2d 998, 1002. Under the manifest error standard, this Court reviews jury instructions as a whole and in light of the circumstances of the case. Boh Bros. Const. v. Luber-Finer, Inc., 612 So.2d 270, 273 (La. App. 4th Cir.1992). A trial court is given broad discretion in wording its jury instructions and will not be reversed as long as the charge correctly states the substance of the law. Barbe v. A.A. Harmon & Co., 94-2423 p. 7 (La.App. 4 Cir. 1/7/98), 705 So.2d 1210, 1216.
DOTD argues that the trial court erred in instructing the jury "an abrupt drop-off between a roadway and shoulder constitutes a defect." DOTD argues that this instruction permitted the jury to improperly infer that a defect was in the highway, and that there was no evidence presented suggesting that there was a drop-off between the roadway and the shoulder. However, the trial court overruled the DOTD's objection stating the jury was to determine whether there was a drop-off as the finders of fact.
The trial court in its instructions to the jury stated:
An abrupt drop-off between a roadway and a shoulder constitutes a defect. *29 An implicit necessity for the use of the shoulder is a connection between the roadway and a shoulder that allows for safe, gradual movement from one to the other.
Consistently, courts have held that an abrupt drop off between a roadway and a shoulder constitutes a defect. See La. R.S. 9:2800; Aetna Casualty & Surety Co. v. State Through Dept. of Transp. and Dev., 97-0716 (La.App. 1 Cir. 4/8/98), 712 So.2d 216. The determination of whether or not there was such a drop-off in the roadway is crucial in this case where the accident, which ultimately caused Tadlock's injury, was allegedly caused by some defect in the roadway surface. Furthermore, the DOTD is incorrect in asserting that there was no evidence suggesting that there was a drop-off between the roadway and the shoulder. Plaintiffs' expert Thomas Reed, a former Parish Engineer for St. Bernard Parish, and professional land surveyor, visited the site of the accident and testified at trial to observing potholes, severe drop-offs, and deplorable conditions on the shoulder and in the recovery zone. We, therefore, find no error in this instruction, as it is a correct statement of the law and was adequate to help the jury reach its findings of fact based on the evidence. Pursuant to our ruling in Barbe, we will not reverse the trial court on this instruction.
DOTD also argues that the trial court erred when it struck its jury instruction # 30, "prudent behavior for a motorist who inadvertently drives off the paved roadway onto the shoulder is first to reduce speed and then attempt a gradual reentry after the motorist has regained control of the vehicle."
The trial court stated in the record that it had a problem with proposed jury charge # 30. It stated, "Specifically, it just seems not to be the law. It's more facts. It's more like you're directing factual matters."
The trial court in its instruction to the jury on this issue stated the following:
A motorist's duty of reasonable care includes the duty to keep his vehicle under control and a duty to maintain a proper lookout for hazards which, by use of ordinary care and observation he should be able to see in time to avoid.
When a motorist leaves his own lane of travel, the motorist must show that his sudden presence in such area was due to unexpected and unforeseen circumstances over which he had no control. Such driver is required to exculpate himself of any fault, however slight, contributing to the accident.
Motorists driving at night are not charged with the duty of guarding against striking an unexpected or unusual obstruction, which is difficult to see, and he had no reason to anticipate he would encounter on the highway.
When a driver has employed reasonable precautions to avoid an accident and a sudden act creates an emergency rendering it impossible for the motorist to avoid the accident, the accident is considered unavoidable and the motorist is not liable.
The trial court was incorrect in its finding that proposed jury charge # 30 is not a correct statement of the law. See La. R.S. 9:2800; Hardenstein v. Cook Const., Inc., 96-0829 (La.App. 1 Cir. 2/14/97), 691 So.2d 177. However, this mistake does not constitute reversible error. The adequacy of jury instructions must be determined in light of the instruction as a whole. Belle Pass Terminal Inc. v. Jolin, 92-1544, p. 35 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 488. A jury verdict will not be set aside because of an *30 incorrect jury instruction absent a showing of prejudice such that the jury was misled and was unable to render a just verdict. Roger v. Dufrene, 97-1946, p. 11 (La.App. 4 Cir. 9/9/98), 718 So.2d 592, 598. Appellate courts exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Wilson v. National Union Fire Ins. Co., 27,702, p. 7 (La.App. 2 Cir. 12/6/95), 665 So.2d 1252, 1259. Our review of the record demonstrates that despite the trial court's error as to the law on jury charge # 30, DOTD did not suffer any undue prejudice as to require a reversal of the jury verdict. The trial court's instruction was not substantially different from the DOTD's proposed instruction. Moreover, the trial court's instruction cannot be said to be misleading or that it prevented the jury from reaching a just verdict. DOTD's argument that the instruction was prejudicial is further undermined by the fact that the jury found Taylor to be 70% at fault for the accident.
Given the vast discretion afforded the trial court with regard to jury instructions and reviewing the instructions as a whole, we find no reversible error.
In its fourth assignment of error, DOTD asserts the trial court committed legal error when it entered a judgment notwithstanding the verdict for Tadlock's loss of consortium claim on behalf of Vorchall Daman.
The Supreme Court, in Anderson v. New Orleans Pub. Serv., 583 So.2d 829, 832 (La.1991), set the standard of review for JNOVs. Citing Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Court stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.
In making this determination, the court should not evaluate the credibility of the witness, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson at 832. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Id.
The trial court in its reasons for granting the JNOV stated in part:
In light of the testimony presented, this Court is of the opinion that the child should have been awarded some amount for loss of consortium. The Court does recognize that although the relationship between father and daughter was limited, Mr. Tadlock assisted in the support of the child and maintained some contact with the child. Plaintiff continued to see his daughter after the accident but given the severity of his injuries their relationship was adversely affected. For these reasons, the Motion for Judgment Notwithstanding the Verdict is granted as to the consortium claim.
*31 A successful claimant for loss of consortium damages has to prove three things: 1) the liability of the defendant, 2) the [plaintiff's] damages, 3) his or her consequent loss of consortium damages. Cooper v. Liberty Mutual Ins., Co., 96-1522, p. 11 (La.App. 4 Cir. 8/20/97), 699 So.2d 115, 120. Loss of consortium in the context of the parent /child relationship means loss of the aid, assistance and companionship of the child, or loss of affection, society and service. Spears v. Jefferson Parish School Board, 94-0352, p. 7 (La.App. 5 Cir. 11/16/94), 646 So.2d 1104, 1107. A jury's finding regarding a claim for loss of consortium is a factual determination. Peck v. Wal-Mart Stores, Inc., 96-0645 (La. App. 3 Cir. 11/6/96), 682 So.2d 974, 977.
The trial court when instructing the jury on the loss of consortium claim stated:
Loss of consortium, services, and society are elements of damages that occur to the relation of any party who suffers an injury under the statute dealing with liability for acts causing damages. The elements of loss of consortium include loss of service, loss of love and affection, loss of society and companionship, and loss of support. Given the right circumstances, Louisiana affords a child compensation for loss of parents' services without regard to the age of the child, provided the parent would have been able to provide such services absent the tortious conduct of a third party.
Filiation of Vorchall Daman was not an issue presented to the jury. However, evidence was presented to establish the relationship between Tadlock and Vorchall Daman. Much of this evidence was directed at demonstrating the level of financial support and personal interaction Tadlock provided Vorchal Daman, in an attempt to support the loss of consortium claim.
At trial, Vorchall Daman's mother, Pamela Daman admitted that Tadlock's name was not on her birth certificate. Ms. Daman also acknowledged that she could not definitively state how she knew that Tadlock was Vorchall's father. She admitted to having several children by different fathers, and that she did not put Tadlock's name on the birth certificate because "there was [sic] going to be too many kids of mine with different last name [sic]." Ms. Daman testified that for the first year of Vorchall's life she and Tadlock lived together and that he thereafter contributed $50.00 per week to Vorchall's maintenance. Tadlock testified that he saw Vorchall on a regular basis and bought her gifts on holidays. J'anet Warren, Tadlock's current girlfriend, testified that Tadlock did not currently live with Vorchall, and did not provide her with physical care.
Other than the testimony of Ms. Daman and Tadlock there is no other evidence to support the claimed loss of Vorchall Daman. Further, there was no evidence presented establishing filiation.
Given the law and the evidence, the jury could have reasonably found that Vorchall was not Tadlock's daughter or that there was no relationship of support to satisfy the criteria for establishing a loss of consortium claim. Our review of the record reveals the evidence presented did not rise to the standard of being so overwhelmingly in plaintiffs' favor that the requirements for granting a motion for JNOV were met. For this reason we reverse the trial court's decision to award damages for loss of consortium, and reinstate the jury's verdict on this issue.
In its fifth assignment of error, DOTD asserts the trial court erred when it did not adequately cure or grant a mistrial after plaintiffs made statements to the jury regarding an insufficiency of insurance coverage for their severe injuries during their closing arguments.

*32 Generally, mistrials are properly granted because of some fundamental failure in the proceeding. It is well settled in Louisiana law that a motion for mistrial in a civil case should be granted under the following circumstances: 1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity, and; 2) where no other remedy would provide relief to the moving party. Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instructions. A trial court is granted great discretion in determining whether to grant a mistrial since mistrials are not a matter of right. (Internal citations omitted).
Searle v. Travelers Ins. Co., 557 So.2d 321 (La.App. 4th Cir.1990).
The statements in question made by plaintiffs' counsel regarding Taylor's $10,000 policy limit are, "What is ten thousand dollars going to do for Mr. Tadlock? It wouldn't even repair his missing tooth he lost in the accident." DOTD complains of further statements made by plaintiffs counsel in rebuttal argument, "we felt we had to sue her (J'anet Warren), and that was a decision so we could get more insurance on the table because that vehicle had uninsured motorist and liability insurance, and if she's parked illegally, as she was, then their liability insurance in that limit goes up ..." No objection was made in the record contemporaneous to either statement; however, DOTD did object after closing arguments and subsequently made a motion for mistrial regarding the statements. The trial court denied the motion for mistrial and said it would charge the jury to disregard any such inferences as to insurance coverage, and that the argument of counsel is not evidence, and subsequently did so, stating:
You have no evidence before you regarding amounts of insurance that are available. I'm talking about amounts of insurance coverage. That was simply given to you in argument of the attorneys. Remember what I told you, the argument whether it be (sic) closing argument, whether it be (sic) opening statements, whether it be (sic) something you may have overheard in connection with an objectionnone of that is evidence, okay? And you will hear that again in the instructions which I'm about to read to youbut I wanted to highlight that and caution you about that. You are not to consider any type of insurance coverage in reaching your decision.
DOTD did not demonstrate to the trial court, nor has it persuasively argued here, that the statements by plaintiffs counsel constitute prejudicial conduct, which cannot be cured by admonition or instruction by the judge. DOTD has also failed to persuasively argue that the trial court should have determined it would be impossible for the jury to reach a proper judgment because of the statements made by counsel and that no other remedy would provide relief except to grant a mistrial. The granting of a motion for mistrial is a severe remedy that should be reserved for the most egregious and prejudicial conduct, which would constitute a failure in the proceedings. In this case the statements of plaintiffs' counsel's, while improper, do not rise to that level of conduct. Further, DOTD received adequate cure for the error by the trial judge's strenuous instruction to the jury to disregard counsel's statements regarding the amount of insurance coverage. Therefore, we find that the trial court did *33 not err in denying DOTD's motion for mistrial.
PLAINTIFFS' ASSIGNMENTS OF ERROR
In their first assignment of error, plaintiffs argue the trial court was correct in granting plaintiffs' request for a JNOV; however, the award of $10,000 is insufficient to compensate Vorchall Daman for her loss.
Given our finding that the trial court erred in granting the plaintiffs' motion for JNOV, this assignment of error is rendered moot.
In their second assignment of error, plaintiffs argue the jury erred in determining that Tadlock was not occupying the vehicle under the UM statute.
The question of whether or not a person is "occupying" a vehicle is a mixed question of fact and law. Aucoin v. Lafayette Ins. Co., 99-1391, p. 9 (La.App. 3 Cir. 2/16/00), 771 So.2d 95, 100. The trier of fact must first make factual findings regarding the physical relationship of the victim to the insured vehicle. See Id. Once those facts are determined, the trier of fact must interpret the policy language and apply the law to the particular circumstances before the court.... See Aucoin, 99-1391, p. 9, 771 So.2d at 100. Traditionally, Louisiana's appellate courts have conceded that the trier of fact is in an extraordinary position to answer these mixed questions of law and fact and therefore, the manifest error rule should apply. Grissette v. Thomas, 96-1520, p. 9 (La. App. 1 Cir. 11/7/97), 704 So.2d 1215, 1221.
The policy in question states:
Who is an Insured Under Coverage UM (Uninsured Motor Vehicle)?
1) the first person named in the declarations;
2) his or her spouse
3) their relatives
4) any other persons while occupying:
a) your vehicle, a temporary substitute vehicle, a newly acquired vehicle or a trailer attached to such a vehicle ...
The policy defines the term "occupying" as "in, on, entering, or alighting from."
According to the policy, Tadlock could qualify as an insured under the UM coverage if he was "in, on, entering, or alighting from" Cynthia Shaw Villivaso's vehicle. Tadlock testified that he and J'anet Warren arrived at Jazzy J's Lounge at about 12:45 a.m., in the Toyota SUV owned by Ms. Villivaso, Ms. Warren's sister. After arriving at Jazzy J's, both entered the club so Ms. Warren, the owner of the bar, could close the establishment for the night. During this time, Tadlock waited at the bar.
At trial, Tadlock stated that he and Ms. Warren were leaving the bar, but Ms. Warren had to go back inside to turn off the lights. He testified at trial that while he was waiting for Ms. Warren next to the Toyota SUV, the Taylor vehicle struck him. However, Tadlock was impeached by his deposition testimony at trial. In his deposition, he testified he was sitting at the bar when he heard a knock at the door, and he answered it. Tadlock stated in his deposition that a neighbor was at the door reporting of a "disturbance" at the back of the building. He further stated that a St. Bernard police officer arrived to address the cause of the disturbance. After speaking with Tadlock at the door of Jazzy J's, the police officer got in his vehicle and drove to the back of the building. It was at this point that Tadlock stated in his deposition that he was on his way to the back of the building when he was struck by Taylor's vehicle. Under the set of facts as described in the deposition, *34 Tadlock was not intending to enter the Toyota SUV and therefore would not be eligible for UM insurance coverage as described in the policy.
The jury, weighing the conflicting testimony given by Tadlock, could have reasonably found that he was not about to enter the vehicle, but was instead heading to the back of the building, making him ineligible for UM coverage. This finding is not manifestly erroneous and therefore we find no error in the jury's determination that Tadlock was not eligible for UM coverage provided for in Ms. Villivaso's State Farm policy.
In their final assignment of error, plaintiffs assert Southern United Fire Insurance Company should be held to pay 50% of the costs under solidary liability and legal interest until paid.
Plaintiffs argue that under the La. C.C. art. 2324(B) as amended in 1987 (making it applicable in this case) but prior to its 1996 amendment, a cap of 50% was placed on solidary liability from each tortfeasor found at fault, because it did not unconditionally deposit its policy limits into the registry of the court. Accordingly, plaintiffs assert that despite the tender of its $10,000 policy limits, Southern United should be held to pay 50% of the costs under solidary liability and legal interest until paid.
Southern United submits that it has no further liability beyond the policy limits and interest it deposited into the registry of the court. Southern United argues that its amended deposit, made August 22, 1996, was unconditional to address plaintiffs concerns.
The trial court grated a directed verdict in favor of Southern United in a judgment signed May 17, 2001. That judgment stated in part:
Southern United moved for a Directed Verdict dismissing any and all further claims against it as Southern United deposited it's [sic] full policy limits with interest into the registry of the court. As Souther United Fire Insurance Company only had a $10,000.00 per person limit on the vehicle insured by William Taylor and has deposited the full $10,000.00 plus interest in the registry of court, Southern United has no further liability to the plaintiffs Corsha Tadlcok and Vorchall Daman in this matter. Vorchall Daman's claims fall under Mr. Tadlock's bodily injury claim and are subject to the same limit.
We find that in accordance with La. C.C.P. art. 4652, Southern United admitted liability for the policy limits in its concursus petition. La. C.C.P. art. 4652 only requires that the insurer admit liability for its policy limits. In Southern United's Petition for Concursus, it unconditionally admitted liability for the full amount of the insurance coverage. The case cited by plaintiffs, Tippett v. Maryland Casualty Co., 536 So.2d 694 (La.App. 3rd Cir. 1988), is distinguishable from the present case because in Tippett the insurer did not admit liability. Plaintiffs also argue that since Southern United defended Taylor they could not have admitted their liability as required under La. C.C.P. art. 4652. Taking into consideration that insurers are required to defend their insured we find this argument has no merit. Further there is no such limitation contained in the law. We therefore find no error by the trial court in this matter.
Southern United argues the trial court's May 18, 2001, judgment, amending the judgment of May 14, 2001, that contained a typographical error, assessed excessive costs to Taylor and erroneously assessed payment of costs to Southern United considering the directed verdict of May 17, 2001. Generally, the party cast in judgment is taxed with the costs of the *35 proceedings. However, the trial court may assess costs in any equitable manner, and its assessment will not be reversed on appeal in the absence of an abuse of discretion. La. C.C.P. art. 1920; Adams v. Canal Indemnity Co., 99-1190, p. 13 (La.App. 3 Cir. 5/10/00), 760 So.2d 1197, 1205. The trial court is vested with great discretion in determining who is liable for costs of court; it may assess costs against any party in any proportion it deems equitable, even against the party prevailing on the merits. Greene v. Greene, 94-79 (La. App. 3 Cir. 10/5/94), 643 So.2d 891.
Given the trial court's broad discretion, we find no error in the assessment of costs to Taylor or Southern United
CONCLUSION
For the foregoing reasons, we affirm the trial court on all assignments of error except the JNOV awarding damages for loss of consortium, which we reverse.
AFFIRMED IN PART; REVERSED IN PART.