SANDRA CABRINA JENKINS, Judge.
[, This is a personal injury action arising out of a rear-end motor vehicle accident. Plaintiffs, Kevin Wendel and wife Vickie Wendel, individually and on behalf of their minor children, brought this action against the rear-ending motorist, Terrell Gilbert, Travelers Insurance Company, and Wing-foot Commercial Tire Systems, LLC. Summary judgment was granted in favor of plaintiff on the issue of liability -and a jury trial was commenced solely as to damages. For the following reasons, we affirm the jury verdict.
FACTS AND PROCEDURAL HISTORY
On February 4, 2009, plaintiff, Kevin Wendel, was injured when a vehicle driven by defendant, Terrell Gilbert, rear-ended his automobile. Shortly after the accident, plaintiff began experiencing neck and back pain. Within a few days of the accident, plaintiff sought the medical attention of a chiropractor, Dr. Bill Batherson. Dr. Batherson recommended that plaintiff set up an appointment with his office, Spine Care Clinic, if the injuries continued. Plaintiff called Dr. Batherson’s office on the tenth day to reserve the next available appointment as he was still experiencing pain. It was ultimately established that plaintiff had a herniated disc in his neck, which required a surgical fusion, and low back disc |2injuries, which required epidural injections. Plaintiffs surgical procedures were unsuccessful and plaintiff was diagnosed with “chronic regional pain syndrome,” which is incurable.
On. September 14, 2009, plaintiff filed suit naming as defendants Terrell Gilbert, Travelers Insurance Company, and Wing-foot Commercial Tire System, LLC. On May 31, 2011, summary judgment was granted in favor of plaintiff on the issue of liability. The case proceeded to trial in June, 2013 solely as to damages, during which time defendants moved for a directed verdict on plaintiffs wife’s and children’s claims for loss of consortium. The trial judge granted the motion on behalf of plaintiffs wife but denied the motion on behalf of his children, leaving that issue for the jury to decide.
Following a six-day trial, the jury returned a verdict in favor of plaintiff. The following awards were rendered:
*832 A.KEVIN WENDEL
1) Past medical expenses $175,540.43
2) Future medical and rehabilitation expenses $1,986,317.00
3) Past, present, and future physical pain and suffering $350,000.00
4) Past, present, and future mental anguish $150,000.00
5) Loss of enjoyment of life $50,000.00
6) Past lost wages $190,161.00
7) Future loss of earning capacity $931,000.00
8) Loss of personal services $40,000.00
TOTAL $3,873,018.43
B. LAINE WENDEL 1) Loss of consortium $50,000.00
C. CHLOE WENDEL 1) Loss of consortium $50,000.00
On June 28, 2013, the trial court entered a judgment reflecting the jury’s verdict. Defendants subsequently filed Motions for Judgment Notwithstanding the Verdict (JNOV) and/or New Trial. The trial court denied these motions and this appeal followed.
|sDISCUSSION
On appeal, defendants assign two errors: (1) the trial court erred in denying defendants’ motion for directed verdict on plaintiffs daughters’ claims for loss of consortium; and (2) the trial court’s awards for past lost wages and future loss of earning capacity, future medical and rehabilitation expenses, and general damages are erroneously excessive and should be reduced.
Plaintiff alleges the trial court erred in a number of ways in his brief.[1] However, plaintiff answered the appeal and only assigned two errors: (1) the trial court’s awards for general and special damages are inadequate and must be increased; and (2) the trial court erred in granting defendants’ motion for directed verdict on plaintiffs wife’s claim for loss of consortium.
Whether the trial court erred in its rulings regarding the issues raised in plaintiffs brief, but not in his answer to appeal, are not properly raised issues on appeal. Miller v. S. Baptist Hosp., 2000-1352, p. 20 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, 23 (citing La. C.C.P. art. 2133); Minvielle v. Minvielle, 2000-1039, p. 4 (La.App. 5 Cir. 11/15/00), 776 So.2d 1223, 1226; Girgis v. Macaluso Realty Comp., Inc., 2000-0753, p. 11 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, 1217. Accordingly, the issues raised only in plaintiffs brief have not been preserved and we are prevented from addressing, them. Plaintiff also seeks frivolous appeal damages, including an award for attorney’s fees, in his answer.

Motions for Directed Verdict

The trial court’s standard when ruling on a directed verdict is whether “after considering the evidence in the light most favorable to the party opposed to the 14motion, [the trial court] finds that it points so strongly and overwhelmingly in favor of the moving party that reasonable minds could not arrive at a contrary verdict on that issue.” Simon v. American *833 Crescent Elevator Co., 99-2058, p. 14 (La.App. 4 Cir. 4/26/00), 767 So.2d 64, 73-4 (quoting Moore v. Safeway, Inc., 95-1552 (La.App. 1 Cir. 11/22/96); 700 So.2d 831, 847). The trial court has much discretion in determining whether a motion for a directed verdict should be granted. Everhardt v. Louisiana Dep’t of Transp. & Dev., 2007-0981, p. 13 (La.App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047 (citing Delaney v. Whitney National Bank, 96-2144, pp. 9-10 (La.App. 4 Cir. 11/12/98), 703 So.2d 709, 717).
The standard of review for the appellate court is “not whether a plaintiff proved his case by a preponderance of the evidence, but rather ... upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiff.” Id. (citing Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 2003-2219, pp. 7-8 (La.App. 4 Cir. 11/17/04), 887 So.2d 722, 727). Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law related to the claims. Id., 2007-0981, p. 14, 978 So.2d at 1047 (citing Tanner v. Cooksey, 42,010, p. 6 (La.App. 2 Cir. 4/4/07), 954 So.2d 335, 339).
Loss of consortium in regards to a parent-child relationship involves a loss pertaining to aid, assistance, companionship, affection, society, or service. Tadlock v. Taylor, 2002-0712, p. 13 (La.App. 4 Cir. 9/24/03), 857 So.2d 20, 31 (citing Spears v. Jefferson Parish School Board, 94-352, p. 7 (La.App. 5 Cir. 11/16/94), 646 So.2d 1104, 1107). For a spouse’s loss of consortium claim, in addition to the above listed items, another element is the impairment of sexual relations. Ritter v. Exxon Mobile Corp., 2008-1404, p. 11 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 547. Thus, to be compensable, plaintiff has to prove: (1) defendants’ liability, (2) plaintiffs damages, and (3) his spouse and/or children’s consequent loss of consortium damages. Tadlock, 2002-0712, p. 13, 857 So.2d at 31 (citing Cooper v. Liberty Mutual Ins., Co., 96-1522, p. 11 (La.App. 4 Cir. 8/20/97), 699 So.2d 115, 120).
In ruling on defendants’ motions for directed verdict, the trial court stated:
The court is going to grant the directed verdict as it relates to Vickie Wendel. However, it is going to deny the directed verdict as it pertains to Laine Wendel [and] Chloe Wendel. The Court does not find that there was any evidence that was presented which would support a loss of consortium claim for Vickie Wendel. However, the claim of the children, as it relates to loss of society, loss of ability ... to care for the children is clearly something that is a question of fact, and there has been sufficient evidence presented for that.
Plaintiff testified, as did his mother and sister, regarding the impact his injuries and subsequent depression had on his relationship with his daughters. Plaintiff testified that because of his chronic physical pain, he interacts with them much less and they now only live with him part-time because he is unable to tend to them like before. Viewing the evidence in the light most favorable to plaintiff, we are convinced that there is sufficient evidence to conclude that plaintiff proved a prima facie case for his daughters’ loss of consortium claims. Accordingly, these claims were properly before the jury and the trial court did not err in its denial of defendants’ motion for directed verdict.
On the contrary, there was no testimony regarding the impact plaintiffs injuries had on his marriage. Plaintiffs wife never testified and plaintiff acknowledged that their marriage was having problems *834 even before the accident. | nWith no evidence showing plaintiffs marriage suffered because of his injuries from the accident upon which reasonable people could reach a contrary result, we find no error in the trial court’s grant of defendants’ motion for directed verdict.
General Damages[2]
An appellate court may not overturn an award of general damages unless the trial court abused its broad discretion in making the award. Munch v. Backer, 2010-1544, p. 8 (La.App. 4 Cir. 3/23/11), 63 So.3d 181, 188 (citing Bouquet v. Wal-Mart Stores, Inc., 2008-0309, pp. 4-5 (La.4/4/08), 979 So.2d 456, 459). “The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact.” Bouquet, 2008-0309, p. 5, 979 So.2d at 459 (citing Duncan v. Kansas City So. Ry. Co., 2000-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682-83; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993)). Prior awards are not referenced unless the trial court abused its discretion and then “only for the purpose of determining the highest or lowest point within the court’s discretion.” Guillot v. Daimlerchrysler Corp., 2008-1485, p. 30 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 196 (citing Logan v. Brink’s, Inc., 2009-0001, p. 13 (La.App. 4 Cir. 7/1/09), 16 So.3d 530, 540). If the award is so disproportionate to the injury that it “shocks the conscience,” the trial court has clearly abused its discretion. Id., 2008-1485, p. 31, 50 So.3d at 196 (quoting Logan, 2009-0001, p. 13, 16 So.3d at 540).
Here, the trial court heard testimony from plaintiffs interventional spine and pain management physician, Dr. Thompson, concerning his injuries, health |7prognosis, and this accident’s effect on plaintiffs well-being. Plaintiffs neurosurgeon, Dr. Vogel, also testified to the rarity of plaintiffs disease. Further, the trial court heard testimony from plaintiff himself, which was corroborated by his mother’s testimony, about his continuing pain and how the accident has impaired his life. After a thorough review of the record, we do not find the trial court abused its vast discretion in its award of damages.

Special Damages

The trier of fact is entitled to wide discretion in assessing the appropriate amount of special damages, which is then given great deference on review. Menard v. Lafayette Ins. Co., 2009-1869, pp. 13-14 (La.3/16/10), 31 So.3d 996, 1007 (citing Guillory v. Lee, 09-0075, p. 14 (La.6/26/09), 16 So.3d 1104, 1116; Wainwright v. Fontenot, 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74). In Menard, the Louisiana Supreme Court identified the standard for reviewing an award of special damages:
An appellate court, in reviewing a jury’s factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly wrong. This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court’s findings. The court must review the entire record to determine whether the trial court’s find *835 ing was clearly wrong or manifestly erroneous. The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury’s fact finding conclusion was a reasonable one.
Id., 2009-1869, pp. 14-15, 31 So.3d at 1007 (emphasis in original) (internal citations omitted). While an appellate court must review the trial court’s finding in light of the entire record, it “must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case |sdifferently.” Id., 2009-1869, p. 15, 31 So.3d at 1007 (citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). In the instant case, both parties allege the trial court’s award of special damages was in error in two categories: (1) past lost wages and future loss of earning capacity; and (2) future medical and rehabilitation expenses.

A. Past Lost Wages and Future Loss of Earning Capacity

A claim for lost wages need not be proven with mathematical certainty; it only requires such proof which reasonably establishes plaintiffs claim, which includes plaintiffs own reasonable testimony. Todd v. Delta Queen Steamboat Co., 2007-1518, pp. 4-5 (La.App. 4 Cir. 8/6/08), 15 So.3d 107, 112 (quoting Daniels v. Burridge, 00-1089, p. 7 (La.App. 4 Cir. 3/21/01), 785 So.2d 906, 911). Likewise, an award for future loss of earning capacity only requires ‘medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident’ at issue. Hammons v. St. Paul, 2012-6346, 12-0347, p. 6 (La.App. 4 Cir. 9/26/12), 101 So.3d 1006, 1011 (quoting Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991)). Moreover, “ ‘[t]his medical evidence may be corroborated and complemented by lay testimony including that of the plaintiff.’ ” Id. (quoting Updegraff v. State ex rel. Dept. of Transp. & Dev., 2001-1048, p. 15 (La.App. 4 Cir. 10/2/02), 828 So.2d 693, 704). In determining a proper future loss of earning capacity award, factors to be considered are: “ ‘the plaintiffs physical condition before the injury, the plaintiffs past work history and work consistency, the amount the plaintiff would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life.’ ” Scarberry v. Entergy Corp., 2013-0214, p. 36 (La.App. 4 Cir. 2/19/14), 136 So.3d 194, 217 (quoting Rathey v. Priority EMS, Inc., 2004-0199, p. 51 (La.App. 4 Cir. 1/12/05), 894 So.2d 438, 471).
In the present case, plaintiff suffered injuries to his neck and back from the accident at issue. As a result of these injuries, plaintiff underwent a surgical fusion and has received numerous epidural steroid injections. Dr. Vogel, the neurosurgeon who performed the surgeries, diagnosed plaintiff with “chronic regional pain syndrome” after plaintiffs surgeries were deemed unsuccessful as he continued to endure persistent pain.
With regard to loss of income, plaintiff testified that his sister has always filed his taxes since she maintained the records for their family business, Old World Builders. Although plaintiff testified he has never personally filed his tax returns, plaintiff affirmed he earned approximately $80,000.00 annually working for Old World Builders.[3] This testimony was supported by the testimony of plaintiffs mother and sister who stated that plaintiff was in *836 charge of the field operations of the business. Plaintiff also testified that he was unable to continue working' due to his physical limitations following this accident as his job primarily involved manual labor. Bobby Roberts, a vocational evaluation specialist, testified that there is only a 10-25% that plaintiff would be able to work at a sedentary or light job. Dr. Thompson, plaintiffs pain management doctor, further testified that he does not think it is likely plaintiff will return to the work force, especially given the medications he is on and the probable progression of his pain.
Both plaintiff and defendant provided testimony from their economists to estimate plaintiffs past and future lost wages. Dr. Shael Wolfson, plaintiffs | ineconomist, determined plaintiffs work-life to be approximately 18.77 years from the date of trial. Dr. Wolfson concluded, based on an annual income of $79,771.00, plaintiffs past lost wages were $352,992.00 and future loss of earnings were $1,300,064.00. Kenneth Boudreaux, defendants’ economist, found plaintiffs- work-life to be approximately 21.37 years from the date of trial. Mr. Boudreaux issued two reports, one in January, 2012 and the other in March, 2012. Mr. Boudreaux’s initial report calculated the figures using an annual salary of $79,771.00 with a disclaimer that he thought it was “unusual” that plaintiffs salary was so high and noted his four year delay in filing. Mr. Boudreaux’s subsequent report used an annual salary of $17,900.00, the maximum salary one can make without-legally filing taxes. Regardless of which report the jury endorsed in ' calculating its award, defendants argue on appeal that plaintiffs pre-accident salary was $29,337.23, maintaining the absolute highest value for past lost wages would be $128,203.70 and $626,936.61 for future lost wages.
The jury’s award of past lost wages for 4.37 years, the time between the accident and trial, implies an annual salary of $43,515.00 and future loss of earning capacity award suggests an annual salary between $43,565.75-$49,600.43, subject to which expert’s work-life estimation was adopted. Such an amount for plaintiffs loss of past wages and loss of future earning capacity is well supported by the record before us. Considering all testimony introduced by both parties, we conclude the jury’s awards for past lost wages and loss of future earning capacity are not excessive, but reasonable. We fail to find an abuse of the trial court’s much discretion in rendering these awards.

_jjjjB. Future Medical and Rehabilitation Expenses

In order for plaintiff to receive an award for future medical expenses, he must prove they are medically necessary by a preponderance of the evidence. Menard, 2009-1869, p. 13, 31 So.3d at 1006 (citing Hoskin v. Plaquemines Parish Government, 97-0061, p. 6 (La.App. 4 Cir. 12/1/97), 703 So.2d 207, 211). In Moody v. Cummings, this Court addressed the standard for awarding future medical expenses:
Future medical .expenses need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred ... Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record ... If the fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then the award is proper.
2009-1233, p. 15 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054, 1064 (quoting Clarkston v. *837 Louisiana Farm Bureau Cas. Ins. Co., 2007-0158, p. 34 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, 187-88).
Applying this standard, we find the record demonstrates the existence of a reasonable factual basis for the trial court’s award for future medical and rehabilitation expenses. The jury heard plaintiffs testimony that he continues to have severe neck and back pain. Dr. Thompson, Mr. Roberts, and plaintiffs mother all testified that because of his constant pain, plaintiff is depressed. Dr. Thompson further testified that based on plaintiffs prognosis, he believed a cervical medial branch block, annual rhizotomy, tri-annual steroid injections, spinal court stimulator implant, bi-monthly pain management appointments, | ^psychiatric therapy, and routine prescription medications[4] are all medically necessary for the remainder of plaintiffs life which was estimated at 38.5 years. Moreover, Dr. Thompson testified he believed plaintiff will need to have attendant care during his final years but could not determine how long that would be required. Dr. Wolfson compiled a report which included an estimated cost for each of Dr. Thompson’s recommendations. The jury heard Dr. Wolfson’s testimony concerning the costs and the record reflects that these figures are appropriate. Accordingly, we find a reasonable factual basis in the record for that award and will not disturb it.

Frivolous Appeal

Damages for a frivolous appeal will be awarded if the appeal is taken solely to delay the action, if the appellant does not seriously believe the law and argument that is being advanced, or if the appeal does not present a substantial legal question. Vincent v. Vincent, 2011-1822, p. 11 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152, 1160 (citing Johnson v. Johnson, 2008-0060, pp. 5-6 (La.App. 4 Cir. 5/28/08), 986 So.2d 797, 801). Damages will not be granted unless the appeal is unquestionably frivolous as appeals are always favored. Dugas v. Thompson, 2011-0178, p. 15 (La.App. 4 Cir. 6/29/11), 71 So.3d 1059, 1068 (citing Haney v. Davis, 2004-1716, p. 11 (La.App. 4 Cir. 1/19/06), 925 So.2d 591, 598).
After a review of the record, we cannot conclude that defendants did not seriously believe they were entitled to relief or that the appeal was taken solely for delay or on an immaterial issue. We therefore decline plaintiffs request to award damages and attorney’s fees for a frivolous appeal.
11SDECREE
For the foregoing reasons, this Court finds no error in the trial court’s rulings on defendants’ motions for directed verdict. We further find the jury’s awards were clearly supported by a reasonable factual basis in the record. Accordingly, we affirm the trial court’s judgment
AFFIRMED.
DYSART, J., concurs in part and dissents in part.

. Specifically, plaintiff argues the trial court erred in: prohibiting a permanent disability line on the jury verdict form, omitting the requested jury charge on earning capacity, allowing economist Kenneth Boudreaux to testify, admitting evidence of plaintiff's failure to file tax returns prior to the accident, and plaintiff’s daughters’ loss of consortium awards.

. Defendants argue in their brief that the general damages award of $650,000 was excessive. The $100,000 awarded to plaintiff’s children ($50,000 each) has already been addressed. The remaining value of $550,000 is attributable to: $350,000 for pain and suffering, $150,000 for mental anguish, and $50,000 for loss of enjoyment of life.

. This amount includes the "draws” that Old World Builders paid on behalf of plaintiff to third parties as well as the "management fees” given directly to plaintiff. While it is disputed whether income includes the "draw” amounts, or solely "management fees,” this amount is recognized simply for noting plaintiff’s testimony.

. Dr. Thompson testified that he believed prescription drugs are medically necessary for the rest of plaintiff’s life, including, but not limited to these specific medications as corn-parable new medicines are frequently released: Lortab, Robaxin, Neurontin, Cymbal-ta, and Zanaflex.