JANE DOE          *       NO. 2020-CA-0320

VERSUS         *

HERBERT LEWIS, JUNIOR    *     **COURT OF APPEAL**

                            *     **FOURTH CIRCUIT**

                            *     **STATE OF LOUISIANA**

            * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-07067, DIVISION "F"
Honorable Christopher J. Bruno, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Taetrece Harrison
650 Poydras Street, Suite 1400
PMB 136
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/DEFENDANT-IN
      RECONVENTION/APPELLANT


Deborah Majeeda Snead
ATTORNEY AT LAW
P.O. Box 871821
New Orleans, LA 70187-1821

      COUNSEL FOR DEFENDANT/PLAINTIFF-IN-
      RECONVENTION/APPELLEE


                               **AFFIRMED**
                               **12/30/2020**

PAB
EAL
RBW

This is a defamation suit. The basis of the defamation suit arises from Plaintiff/Defendant-in-Reconvention/Appellant's, Jane Doe, allegation that Defendant/Plaintiff-in-Reconvention/Appellee, Herbert Lewis, Jr., had non-consensual sex with her. In July 2014, Jane Doe filed a lawsuit against Mr. Lewis seeking damages for alleged assault and battery, rape, and false imprisonment. Mr. Lewis filed an answer and a reconventional demand against Jane Doe for defamation. Mr. Lewis alleged that as a result of the false statements, regarding the sexual assault and rape by Jane Doe to the District Attorney's office, Mr. Lewis' friends, his employer, and the Louisiana State Nursing Board (the "nursing board"), he suffered damages; he itemized his damages as fear of loss of liberty, loss of income, actual loss of income, loss of consortium, mental anguish, and loss of enjoyment of life. Mr. Lewis alleged that the false statements were made with malicious intent to harm his reputation.

A bench trial was scheduled for January 21, 2020. Prior to trial, Jane Doe filed two motions to continue trial, which were denied. The bench trial was held on January 21, 2020. At the conclusion of the trial, the district court dismissed

Jane Doe's case with prejudice, and found in favor of Mr. Lewis on his reconventional demand, awarding Mr. Lewis $75,000.00 in general damages and $18,462.14 in lost wages. The district court issued judgment, along with written reasons for judgment, on January 27, 2020.[1] From this judgment, Jane Doe appeals, challenging only the district court's finding of fault against her for defamation of Mr. Lewis.[2] In response, Mr. Lewis prays that this Court award him attorney's fees and costs for defending this appeal.

For the reasons to be discussed *infra*, we affirm the district court's judgment, and deny Mr. Lewis' requests for attorney's fees and costs.

## DISCUSSION

Jane Doe asserts that the district court erred in denying her motions to continue trial and in finding her at fault for defamation, assigning three errors:

1. The district court erred in denying the January 10 and January 21, 2020 motions to continue the January 21, 2020 trial date;

2. Mr. Lewis presented insufficient evidence to support his claim of defamation; and

3. Mr. Lewis' award of damages was based on hearsay testimony and no supporting evidence.

We will address each assigned error in turn.

---

[1] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger,* 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Wooley*, 09-0571, 09-0584, 09-0585, 09-0586, p. 78, 61 So.3d at 572; *See also Bruno v. CDC Auto Transp., Inc.,* 19-1065, p. 9 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, 13 n.11, *writ denied,* 20-00836 (La. 10/14/20), 302 So.3d 1118.

[2] Jane Doe does not appeal her underlying case asserting the allegation of rape against Mr. Lewis, which the district court dismissed with prejudice.

2

*Motions to Continue Trial*

Jane Doe argues the district court erred in denying her motions to continue trial on January 10, 2020, and January 21, 2020, respectively.

A trial judge has wide discretion in determining whether a motion for continuance should be granted; thus, the standard of review in such cases is abuse of discretion. *Jordan v. Cmty. Care Hosp.*, 19-0039, 19-0040, pp. 22-23 (La. App. 4 Cir. 7/24/19), 276 So.3d 564, 582 (citations omitted).

*January 7, 2020 motion*

Trial was scheduled for January 21, 2020. Jane Doe filed a written motion to continue trial on January 7, 2020. Counsel[3] for Jane Doe requested the matter be continued for three months from the January 21, 2020 trial date. Counsel asserted that an out-of-state material witnesses could not be served or contacted and another witness, who was served, would be out of town the day of trial. A hearing on the motion was held on January 10, 2020. At the hearing, counsel for Jane Doe stated:

> [W]e had some witnesses who previously we spoke to who said that they were going to be here. . . . [M]y client . . . previously purchased plane tickets for at least one of the witnesses who we tried to serve I think. . . . We have also tried to call the witnesses. We have tried to e-mail the witnesses.

Counsel for Mr. Lewis objected to the continuance and pointed out that Jane Doe's petition for damages was filed in 2014, and the case had been first set for trial in 2018, and again in 2019. The district court denied the motion, but postponed the

---

[3] Vercell F. Fiffie represented Jane Doe at the trial proceedings. She is represented by Taetrece Harrison in the appellate proceeding.

start of trial until 1:00 p.m. on January 21, 2020, and offered to allow Jane Doe to use the depositions of the witnesses.[4]

Louisiana Code of Civil Procedure Article 1602 sets forth two mandatory grounds for granting of a continuance:

> A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.

*See Pinnace v. Francingues*, 404 So.2d 1347, 1348 (La. App. 4th Cir. 1981)(citation omitted)(wherein this Court held that the wording of La. C.C.P. art. 1602 was mandatory). Interpreting Article 1602, this Court, in *Loicano v. Maryland Cas. Ins. Co.*, 301 So.2d 897, 901 (La. App. 4th Cir. 1974), opined, "As we view the matter, the test for production of a material witness is not simply that a subpoena has or has not been granted, but that the witness has absented himself contrary to the arrangement made by the party for the witness to appear." A review of the record does not reflect that the out-of-state witnesses were subpoenaed nor absented themselves contrary to an arrangement with Jane Doe. If a mandatory ground for a continuance is not proven, as in this case, "[a] continuance may be granted in any case if there is good ground therefor." La. C.C.P. art. 1601. Review of the record indicates that Jane Doe had ample time from the first and second trial settings to secure her witnesses. Additionally, the district court postponed the start time of trial to help accommodate Jane Doe's witnesses. We conclude the district

---

[4] The district court advised that since the witnesses were out of state, the only way to compel them to testify at trial was to "fly there and take letters of [sic] rogatory and serve them with a subpoena and take their depositions."

court did not abuse its discretion in denying the January 7, 2020 motion to continue trial.

*January 21, 2020 motion*

At the beginning of the trial, counsel for Jane Doe, again, filed a written motion to continue trial, arguing several grounds.

First, counsel re-urged that material witnesses were not present. The record does not reflect what steps, if any, counsel for Jane Doe took to have the witnesses present since the January 10, 2020 hearing. In addition, the district court allowed the use of the deposition testimony of three of Jane Doe's witnesses, in lieu of the witnesses being present for trial.[5] In *Hebert v. Travelers Ins. Co.*, 245 So.2d 563, 565 (La. App. 3rd Cir. 1971), the appellate court found no error by the trial court in denying the continuance of trial where four witness, who were not subpoenaed, testified by deposition.

Second, Jane Doe asserts the district court erred in denying the continuance because she had a valid medical reason. Counsel argued that Jane Doe, who lived out-of-state, could not attend the trial because her doctor advised her not to fly due to a sudden on-set of back pain. Counsel explained that Jane Doe bought a plane ticket on January 17, 2020, to fly to New Orleans for the trial; the next day, she experienced back pain, she went to the doctor, and the doctor ordered her to bed rest. Although Counsel attached the doctor's note to his motion to continue, the district court stated that there was no way to authenticate the doctor's note. Counsel for Mr. Lewis offered for Jane Doe to testify remotely. Jane Doe's

---

[5] At trial, the depositions of three witness, who were either present before or after the sexual encounter, were offered, filed, introduced, and admitted into evidence. The testimony by these witnesses, Avril Sanders, and his girlfriend, Santrice Bradford, and Shermayne Sanders, who were friends of Jane Doe and present at the birthday party, pertained to the allegation of simple rape.

counsel countered that "[i]f she is not here, then I think that would be a major disservice to her and to the -- Mr. Lewis in the matter being that one of -- the plaintiff and defendant would not be here to be questioned in court and in front of the Judge."

"[T]he mere absence of a party from court is not [a] sufficient ground for granting a continuance." *Mongrue v. Mongrue*, 398 So.2d 1199, 1201 (La. App. 4th Cir. 1981)(citations omitted). In the case *sub judice*, the district court denied the continuance but allowed Jane Doe to testify at trial via video attendance, where counsel had the ability to question and cross-examine her. We find the district court did not abuse its discretion in denying the January 21, 2020 motion to continue trial.

This claim lacks merit.

### Insufficient Evidence

Jane Doe asserts that "the trial court committed manifest error and was clearly wrong in finding [Mr. Lewis] provided sufficient evidence to support his claim of defamation."

*Standard of review*

This case involves factual determinations by the district court; thus, the manifest error standard of review applies. *See Thompson v. Bank One of Louisiana, NA*, 13-1058, p. 9 (La. App. 4 Cir. 2/26/14), 134 So.3d 653, 660. In applying the manifest error standard, "[t]he issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Zito v. Advanced Emergency Med. Servs., Inc.*, 11-2382, p. 5 (La. 5/8/12), 89 So.3d 372, 375 (citation omitted). "If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing

court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (citation omitted). *See also*, *Creole Gardens, L.L.C. v. Schreiber*, 19-0105, 2019 WL 4924305, at *3 (La. App. 4 Cir. 9/25/19), *writ denied,* 19-01897 (La. 1/22/20), 291 So.3d 1047 (citing *Gaines v. Wilson*, 17-0895, p. 5 (La. App. 4 Cir. 3/21/18), 240 So.3d 1010, 1014) (wherein this Court explained that "[i]n order to reverse the findings of the factfinder, the appellate court, upon a review of the record in its entirety, must determine that (1) no reasonable factual basis exists for the district court's factual findings and (2) the findings must be clearly wrong."). "However, where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness' story, the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination." *Zito*, 11-2382, p. 5, 89 So.3d at 375 (citations omitted).

*Defamation defined*

This Court, in *Thompson*, 13-1058, pp. 10-11, 134 So.3d at 661 (citation omitted), explained that "[b]y definition, a statement is defamatory if it tends to harm a person's reputation, lowers the person in the estimation of the community, deters others from associating with the person, or otherwise exposes the person to contempt or ridicule." There are five elements that a party asserting a defamation claim must prove by a preponderance of the evidence: (1) defamatory words; (2) unprivileged publication or communication to a third party; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Muller v. Fort Pike Volunteer Fire Dep't*, 19-0156, p. 14 (La. App. 4 Cir. 6/26/19), 275 So.3d 927, 936-37; *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, p. 4 (La. 7/10/06), 935 So.2d 669, 674. "If

7

even one of the required elements [of defamation] is found lacking, the cause of action fails.'" *Muller*, 19-0156, p. 14, 275 So.3d at 937 (quoting *Costello v. Hardy*, 03-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 140).

An unprivileged communication is one that is not privileged. In *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, pp. 16-17 (La. 7/10/06), 935 So.2d 669, 681-82, the Supreme Court explained:

> In Louisiana, privilege is a defense to a defamation action. *Costello,* 03-1146 at 15, 864 So.2d at 141. . . Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. *Madison v. Bolton,* 234 La. 997, 102 So.2d 433, 439 n. 7 (1958). An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings. *Id.* A conditional or qualified privilege arises in a broader number of instances. *Id. . . .* It is impossible to reduce the scope of a conditional or qualified privilege to any precise formula. *Id.* Nevertheless, the elements of the conditional privilege have been described as "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only." *Madison,* 102 So.2d at 439 n. 7. The privilege, it has been held, "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate." *Toomer* [*v. Breaux*]*,* 146 So.2d [723] at 725 [(La. App. 3 Cir.1962)].

In *Costello*, 03-1146, p. 16, 864 So.2d at 142 n.13, the Supreme Court held that a privileged communication is an affirmative defense which must be specially pled, explaining that it "raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the defamation action and will have the effect of defeating the defamation claim." *See also Sullivan v. Malta Park*, p. 11, 14-0823 (La. App. 4 Cir. 12/10/14), 156 So.3d 1200, 1207 (citing La. C.C.P. art. 1005 and *Costello,* 03-1146, p. 16, 864 So.2d at 142 n.13)(wherein this Court held that "[a] qualified privilege is an affirmative defense to a cause of action for

defamation, which must be specially pled in a defendant's answer."); *Alexander v. Blue Williams, L.L.P.*, 18-0776, 2019 WL302078, at \*5 n.8 (La. App. 4 Cir. 1/23/19), *writ denied*, 19-00432 (La. 9/6/19), 278 So.3d 370, and *writ denied*, 19-00435 (La. 9/6/19), 278 So.3d 372, and *writ denied,* 19-00431 (La. 9/6/19), 278 So.3d 968.

In Louisiana, defamatory words have traditionally been divided into two categories. The first category are words that are susceptible to a defamatory meaning. The second category are words that are defamatory *per se*. "[W]ords that are defamatory *per se* are those which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances." *Thompson*, 13-1058, p. 11, 134 So.3d at 661-62. In *Thompson*, this Court explained that "[p]ublication means the communication of non-privileged defamatory words to even one single person besides the party defamed." *Id*., 13-1058, p. 14, 134 So.3d at 663 (citations omitted). The element of publication can be proven by direct or circumstantial evidence. *Id*. (citation omitted). When a plaintiff proves publication of words that are defamatory *per se,* "[i]njury may . . . be presumed" and "falsity and malice (or fault) are presumed" but may be rebutted by the defendant. *Id*., 13-1058, p. 11, 134 So.3d at 662. "Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified." *Costello*, 03-1146, p. 15, 864 So.2d at 141 (citation omitted).

*Trial testimony*

The pertinent witnesses at trial were Jane Doe, Mr. Lewis, Tara Holland, and Caroline Moore.

Jane Doe resided in New Orleans, Louisiana, in 2013. Mr. Lewis resided in Baton Rouge, Louisiana. The two had been friends for several years and both were registered nurses. On July 20, 2013, Jane Doe had a birthday party, which Mr. Lewis attended. Prior to the party, Jane Doe and Mr. Lewis discussed that he could stay at her house and sleep on the couch in the living room, if he did not want to drive back to Baton Rouge. Jane Doe rented a party bus for the party. Jane Doe, Mr. Lewis, and other guests were drinking alcohol and dancing on the party bus. After returning home, Jane Doe and some of her guests went to a nightclub. Mr. Lewis stayed at Jane Doe's house and went to sleep in the extra bedroom. When Jane Doe and several of her guests, including a couple, returned, Mr. Lewis was awakened. The couple planned to sleep in the extra bedroom. After the couple retired to the extra bedroom, Mr. Lewis and Jane Doe had sex. Jane Doe alleged it was non-consensual; Mr. Lewis alleged it was consensual.

On July 24, 2013, Jane Doe filed a police report with the New Orleans Police Department, alleging Mr. Lewis raped her. Mr. Lewis was arrested on the charge of simple rape five days later, on December 31, 2013. Mr. Lewis testified he spent around 8 to 10 hours in jail and was released after posting bond in the approximate amount of $1,200.00. In 2014, the Orleans Parish District Attorney refused the charges against Mr. Lewis.

At trial, Jane Doe's attorney admitted that Jane Doe contacted Mr. Lewis' professional licensing board, the nursing board, and informed it of the alleged rape by Mr. Lewis. Mr. Lewis stated that after he was arrested he also contacted the nursing board to inform it of the pending charge as he was required to do. Mr.

Lewis recalled Jane Doe had contacted the nursing board the week before he did. Due to the accusation, the nursing board conducted its own investigation.

Mr. Lewis was employed by the Louisiana Department of Public Safety and Corrections where he worked as a registered nurse at the Louisiana Correctional Institute for Women ("LCIW"). Mr. Lewis testified that Jane Doe contacted his work multiple times. Ms. Holland, the Assistant to the Warden at the LCIW, testified that she received a letter, via fax, from Jane Doe stating that Mr. Lewis sexually assaulted her. Ms. Holland gave the letter to the Warden of LCIW. She recalled Mr. Lewis was placed on administrative leave because of the accusation.[6] Mr. Lewis testified he was on administrative leave for 544 hours and lost wages as a result.

One of Mr. Lewis' co-workers, Caroline Moore, who worked for the Department of Public Safety and Corrections as a nurse practitioner, testified she knew Jane Doe because she had taught Jane Doe at Southern University School of Nursing. Ms. Moore stated that Jane Doe contacted her while Ms. Moore was at work. During their conversation, Jane Doe informed Ms. Moore she was pressing rape charges against Mr. Lewis.

The district court found Jane Doe's accusation that Mr. Lewis committed simple rape was defamation *per se,* reasoning in pertinent part:

> [Jane Doe]'s accusation of rape qualifies as defamation *per se.* She communicated this allegation to numerous people. [Jane Doe] contacted the Nursing Board, which resulted in Mr. Lewis' suspension. She also contacted his employer, which also resulted in his suspension. Ms. Tara Holland ("Ms. Holland"), the Assistant to the Warden at the Louisiana Correctional Institute for Women, testified that she received a fax from [Jane Doe] stating that Mr.

---

[6] At trial, Ms. Holland was asked, "Do you recall as a result of that letter if any action was taken by DOC?" Ms. Holland responded, "Yes, ma'am. He was placed on administrative leave."

Lewis sexually assaulted her, which she passed on to the Warden. [Jane Doe] also contacted Ms. Moore, a nurse practitioner for the Department of Corrections, under the guise of seeking employment. She then told Ms. Moore that though she was interested in employment but [sic] she could not work at the prison because Mr. Lewis worked there. [Jane Doe] created a false reason to tell Ms. Moore about the alleged rape. Her statement surprised Ms. Moore; she did not know anything about the alleged rape. Ms. Moore taught [Jane Doe] at Southern University. [Jane Doe] told numerous friends about the alleged rape.

We conclude that the district court was correct in finding Jane Doe's statement was defamatory *per se*. We note the district court, after trial on the merits, found that the criminal accusation of rape against Mr. Lewis was false and dismissed Jane Doe's petition for damages against Mr. Lewis with prejudice. This judgment of dismissal is a final judgment, as Jane Doe did not challenge the district court's judgment. Consequently, the record before this Court supports the district court's finding that Jane Doe communicated to another person, other than Mr. Lewis, the false criminal accusation that Mr. Lewis raped her.

Jane Doe, however, contests whether Mr. Lewis proved the element of unprivileged publication/communication to a third party. Because this is the only element of defamation Jane Doe contests, our review is limited to this element.

*Publication/Communication*

First, Jane Doe, through her counsel, admitted contacting the nursing board and informing it of her allegation against Mr. Lewis.[7] In addition, Mr. Lewis testified he was required to notify the nursing board of his arrest. On appeal, Jane

---

[7] During Jane Doe's case-in-chief, she was not questioned by the parties concerning the defamation action, and she was not called as witness in Mr. Lewis' case-in-chief in his reconventional demand.

12

Doe, however, argues that the communication to the nursing board does not support a claim for defamation. As discussed *supra*, the publication element of a defamation action requires an unprivileged publication or communication of defamatory words to someone other than the person defamed. Jane Doe essentially argues that her communication to the nursing board was a conditional or qualified privileged communication. Specifically, Jane Doe asserts:

> First, Mr. Lewis admittedly stated during his deposition that he intended to notify the nursing board because he was required to do so. However, Mr. Lewis stated that Ms. Doe had already notified the nursing board of his arrest for rape. This admission by Mr. Lewis that he was required to report this incident proves that this was not defamation. Because Ms. Doe reported the arrest to the nursing board before Mr. Lewis does not make more defamation because she reported and less defamation when he planned to report it.

In her answer to Mr. Lewis' reconventional demand, Jane Doe asserted, as an affirmative defense, that Mr. Lewis had no right of action against her for defamation because "reporting was required by law or rules that JANE DOE must comply with." In addition, Jane Doe unsuccessfully urged this defense in a motion for summary judgment seeking to dismiss Mr. Lewis' defamation action on the ground that she enjoyed a conditional privilege. She argued that as a registered nurse she had a duty to report Mr. Lewis' conduct, citing La. Admin. Code tit. 46 Pt XLVII, Section 306(T)(8)(m) which provides the nursing board will have grounds for disciplinary proceedings against a nurse who "fail[s] to report, through the proper channels, *facts known* regarding the incompetent, unethical, or illegal practice of any health care provider."(emphasis added).[8]

---

[8] After a hearing on the motion for summary judgment was held December 20, 2019, the district court denied the motion. Jane Doe sought review by this Court. While the writ was pending, trial on the merits of Jane Doe's and Mr. Lewis' lawsuits was held on January 21, 2020. This Court denied the writ application, *Doe v. Lewis*, 20-0084 (La. App 4 Cir. 4/30/2020)(unpubl.).

However, as noted above, to enjoy a conditional privilege, as affirmatively asserted by Jane Doe, she must show that the communication/publication was made in good faith. *See Kennedy*, 05-1418, p.17, 935 So.2d at 681 (quoting *Madison,* 102 So.2d at 439 n.7)(the elements of the conditional or qualified privilege have been described as "'good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.'"). In the case *sub judice*, the district court found that Jane Doe failed to prove the rape accusation against Mr. Lewis; the district court reasoned that it did not find Jane Doe's testimony credible and "she . . . created a fictional account of her encounter with Mr. Lewis." Jane Doe did not challenge this finding.

Accordingly, we conclude Jane Doe failed to prove–at the time she communicated the criminal accusation against Mr. Lewis to the nursing board– that the communication was in good faith. Due to her failure to show the communication to the nursing board was in good faith, she does not meet the requirements of a conditional privileged communication. Thus, the record supports that Jane Doe communicated unprivileged defamatory *per se* words to a person other than Mr. Lewis.

Second, Jane Doe, through her counsel, denied contacting Mr. Lewis' employer. Jane Doe asserts that Ms. Holland's testimony is hearsay, and "[i]t is impossible to verify the veracity of her testimony as to receiving a fax because no documentation was provided as evidence to the trial court." Jane Doe contends the district court erred in relying on Ms. Holland's testimony. At trial, counsel for Jane Doe objected to Ms. Holland's testimony regarding the contents of the letter, arguing it was inadmissible hearsay because the fax was not produced and offered

14

at trial. The district court overruled Jane Doe's objection. The district court explained that Ms. Holland's testimony, regarding the content of the faxed document, was to authenticate that a communication was made by Jane Doe to LCIW regarding Mr. Lewis. In addition, the district court limited Ms. Holland's testimony to receipt of the letter, the contents of the letter, and the consequences Mr. Lewis faced as a result of the contents of the letter.

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the present trial or hearing, offered into evidence to prove the truth of the matter asserted.'" *State in Interest of M.B.*, 19-0931, p. 11 (La. App. 4 Cir. 2/12/20), 292 So.3d 930, 938, *writ denied*, 20-00422 (La. 5/7/20), 296 So.3d 611 (citing La. C.E art. 801). A "statement" includes either oral or written assertions. La. C.E. art. 801(A). Testimony concerning the contents of a written communication is hearsay unless the author is present to be cross-examined. *See State v. Joya,* 354 So.2d 543, 545 (La. 1978). However, an exception to the hearsay rule allows a person to testify regarding the content of a document "to prove receipt of the information and not the truth of the statement." *State v. Joya*, 354 So.2d at 545 (citations omitted). "'[E]videntiary rulings by the trial court are reviewed under an abuse of discretion standard.'" *Hohensee v. Turner*, 14-0796, p. 5 (La. App. 4 Cir. 4/22/15), 216 So.3d 883, 886 (quoting *727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.,* 12-1014, p. 19 (La. App. 4 Cir. 8/21/13), 122 So.3d 1152, 1163). After a review of the record and applicable law, we find no abuse of discretion by the district court in allowing the testimony of Ms. Holland.[9]

---

[9] The district court also found that Ms. Holland's testimony was admissible as impeachment testimony in light of Jane Doe counsel's assertion that Jane Doe did not recall communicating the rape accusation to Mr. Lewis' employer.

15

Third, Jane Doe challenges Ms. Holland's credibility. She asserts that there is a discrepancy between Mr. Lewis' deposition testimony, wherein he testified that an arrest report was faxed to his employer by Jane Doe, and Ms. Holland's trial testimony that Jane Doe faxed a letter. However, Mr. Lewis' deposition was not admitted into evidence at trial, and Mr. Lewis nor Ms. Holland were questioned regarding this discrepancy.[10] Thus, the record before this Court does not support Jane Doe's assertion there was a discrepancy.

Finally, even assuming the district court erred in considering Jane Doe's communication to the nursing board and to Mr. Lewis' employer through Ms. Holland's testimony to support the element of publication, Ms. Moore's testimony, which was unrebutted and uncontested, indicated that Jane Doe communicated the *per se* defamatory statement to her.

Consequently, we conclude the district court did not err in finding that the element of an unprivileged communication to a third party was met. This claim lacks merit.

### *Award of damages*

Jane Doe asserts that the district court erred in awarding Mr. Lewis general damages and lost wages, based on hearsay testimony and no supporting evidence.

### *Lost wages*

Jane Doe contends Mr. Lewis failed to prove his earnings and loss of income. Jane Doe argues that Mr. Lewis failed to testify as to the wages he earned at his part-time job, while he was suspended from LIWC:

---

[10] Although Mr. Lewis' deposition was part of the appellate record, it was not admitted into evidence at trial. *See* La. C.C.P. art. 1450, uses of depositions at trial.

Mr. Lewis contradicted himself regarding his employment because during the deposition he stated that he continued working while there was a pending investigation but during the trial, he never testified about his part-time job, he only testified regarding loss wages from his prior job with the Department of Correction.

Jane Doe, in support of her argument, quotes Mr. Lewis' deposition testimony. However, as previously noted, Mr. Lewis' deposition was not admitted into evidence at trial nor was it used to impeach him; thus, it may not be considered by this Court.

"A claim for lost wages need not be proven with mathematical certainty; it only requires such proof which reasonably establishes plaintiff's claim, which includes plaintiff's own reasonable testimony." *Wendel v. Travelers Ins. Co.*, 14-0002, p. 8 (La. App. 4 Cir. 10/8/14), 151 So.3d 828, 835 (citations omitted). "The trier of fact is entitled to wide discretion in assessing the appropriate amount of special damages, which is then given great deference on review." *Id.*, 14-0002, p. 7, 151 So.3d at 834. In support of his loss wage claim, Mr. Lewis testified that his employer put him on administrative leave due to Jane Doe's accusation. Mr. Lewis stated that, according to human resources from his employer, he was suspended for 544 hours and lost $18,462.14 in wages. Based on Mr. Lewis' testimony, the district court awarded lost wages in the amount of $18,462.14. We find no abuse of discretion.

*General damages*

Turning to Mr. Lewis' award of $75,000.00 in general damages, Jane Doe asserts the district court abused its discretion in determining Mr. Lewis' general damage award as it was not supported by the evidence presented at trial. Jane Doe contends that Mr. Lewis, during his deposition, only testified that he had trouble

17

sleeping, and Mr. Lewis failed to prove any damage to his reputation due to the alleged defamation.

"A plaintiff claiming defamation must present competent evidence of the injuries suffered," and "demonstrate that the defamatory statements were a substantial factor in causing the harm." *Thompson*, 13-1058, p. 18, 134 So.3d at 665 (citation omitted). General damages for defamation include injury to reputation, personal humiliation, embarrassment, mental anguish, and suffering. *Id.*, 13-1058, p. 19, 134 So.3d at 666 (citation omitted). Louisiana has recognized that injury to one's reputation may result simply from the character of the defamatory words, although proof of pecuniary loss is impossible. *Smith v. Atkins,* 622 So.2d 795, 800 (La. App. 4th Cir. 1993)(citations omitted). "Defamation damages must be proved by competent evidence, but there is no need to establish the actual pecuniary value of the injury suffered." *Lege v. White*, 619 So.2d 190, 191 (La. App. 3rd Cir. 1993)(citation omitted). Expert testimony is not necessarily required to support an award for general damages in a defamation suit. *Arnaud v. Dies*, 16-642, p. 14 (La. App. 3 Cir. 12/7/16), 208 So.3d 1017, 1027.

This Court set forth the standard of review for damage awards in *Sommer v. State, Dep't of Transp. & Dev.*, 97-1929, p. 17 (La. App. 4 Cir. 3/29/00), 758 So. 2d 923, 935:

> The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." *Moore v. Healthcare Elmwood, Inc.,* 582 So.2d 871 (La. App. 5 Cir.1991).

Mr. Lewis testified how he suffered, following his arrest for the alleged rape:

Well, my marriage has definitely suffered dealing with -- I coach soccer. I have two daughters. I deal with them. I cannot have their friends sleep over. I cannot have my daughter's cousin sleep over with me being there. . . I am one bad dream from a little girl just thinking someone was there. I am one lie away from being in jail. That is really hard for me to deal with.

I was arrested[.] [I] did . . . go to Orleans OPP for something I did not do. It does affect my every day dealings when it comes down to being in the presence of women . . . If a woman walks in my office alone, I will get up and open my door if she closes my door . . . I do not want to put myself in a position where someone can do that to me again.

Mr. Lewis testified he had issues sleeping, eating, and dealing with his problems, and as a result, he spoke to a counselor. Mr. Lewis stated that he lived in fear as a result of going to jail for something he did not do. Mr. Lewis continued that he still has trouble sleeping and the prolonged matter has worn him down.

In addition, Ms. Moore, when questioned about how Mr. Lewis acted when he returned to work after his administrative leave, responded that Mr. Lewis was embarrassed and uncomfortable "returning with those allegations over his head." She continued that prior to being accused of rape, Mr. Lewis was very friendly, but that changed for a long time after he was accused.

In its written reasons, the district court wrote in pertinent part:

[M]s. Moore testified that Mr. Lewis was humiliated and embarrassed.

* * *

[M]r. Lewis became isolated and depressed. His relationship with his girlfriend was strained. Mr. Lewis was extremely guarded about socializing, fearing that someone may have heard about his arrest for simple rape. This Court finds that Mr. Lewis has been through a horrible and ostracizing experience.

We find the record supports the district court's findings. Mr. Lewis presented competent evidence of the injuries he suffered as a result of the

defamatory statements and the statements were a substantial factor in causing the harm.

With regard to the award for general damages, we reviewed reported cases in which damages for defamation have been considered by Louisiana courts when defamatory accusations of criminal conduct were at issue. Although there were not many recent reported cases, we find these cases still instructive. In *Johnson v. Lanoix*, 03-143 (La. App. 5 Cir. 5/28/03), 847 So.2d 1283, the Fifth Circuit reviewed general damage awards in cases that involved defamatory words that were criminal accusations:

> In *Connor* [, *et al*] *v. Scroggs* [, *et al*], [35,521 (La. App. 2 Cir. 06/12/02), 821 So.2d 542, 552], the Connors alleged that their four-year-old daughter, C.C., was molested by the Scroggs during an overnight stay at their home. The Second Circuit affirmed the trial court's award of $35,000.00 to the Scroggs for their embarrassment and humiliation, considering the seriousness of the allegations, the small community in which they were made, and the length of time which it ultimately took the Scroggs to clear their names.
>
> In *Trentecosta v. Beck,* 95-0096 (La. App. 4 Cir. 02/25/98), 714 So.2d 721, on remand from the Louisiana Supreme Court for determination of damages, the Fourth Circuit awarded plaintiff $50,000.00 for a defamatory statement by a police officer's statement that plaintiff was guilty of milking thousands of dollars from charities using his Bingo Hall over the years. . . .
>
> * * *
>
> In *Smith v. Atkins,* 622 So.2d 795 (La. App. 4 Cir. 1993), the Fourth Circuit increased a defamation award to $5,000 on proof that a college teacher referred in class to plaintiff, a female student, as a "slut," causing negative reactions by her fellow students and requiring plaintiff to seek psychiatric help for depressive disorder.

*Id.*, 03-143, pp. 10-11, 847 So.2d at 1288 (footnote omitted). In 1995, in *Jeansonne v. Detillier*, 94-903 (La. App. 5 Cir. 5/10/95), 656 So.2d 689, the plaintiff sought review of the trial court's reduction of an $80,000 jury award to $50,000, for defamation involving a false accusation of rape. The Fifth Circuit

noted the plaintiff spent less than ten hours in jail, he was harassed at work because of the incident, and he received harassing phone calls. The plaintiff did not consult a psychiatrist, but consulted a doctor about sleep problems. The Fifth Circuit concluded that that the $80,000 jury award was excessive and the judgment reducing it to $50,000, was "the highest amount supportable by the record and prior jurisprudence." *Id.*, 94-903, p. 9, 656 So.2d at 693. More recently, the Third Circuit, in *Cluse v. H & E Equip. Servs., Inc.*, 09-574 (La. App. 3 Cir. 3/31/10), 34 So.3d 959, awarded the plaintiff falsely accused of theft of property valued at $68,000.00 general damages in the amount of $25,000.00. In addition, this Court, in *Thompson*, 134 So.3d 653, awarded the plaintiff $150,000.00 in general damages when the church, in which the plaintiff served as its preacher, falsely accused the plaintiff of embezzling church funds, and of being a thief and a liar.

In the case *sub judice*, based on Mr. Lewis' and Ms. Moore's testimony, as well as a review of damages awarded in similar cases, the general damages award of $75,000.00 is not so high that it "shocks the conscience." We conclude that the district court did not abuse its discretion in awarding Mr. Lewis $75,000.00 in general damages and lost wages in the amount of $18,462.14.

This claim lacks merit.

### Attorney's fees on appeal

In his appellee's brief, Mr. Lewis requests reasonable attorney's fees and costs be awarded by this Court, citing La. C.C.P. art. 2164.[11] In *Phipps v. Schupp*,

---

[11] La. C.C.P. art. 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."

17-0067, pp. 3-4 (La. App. 4 Cir. 7/19/17), 224 So.3d 1019, 1022, this Court denied a request for attorney's fees and costs made for the first time in the appellee's brief, writing:

> The proper procedure for an appellee to request frivolous appeal damages is to file either an answer to the appeal or a cross-appeal. Roger A. Stetter, LA. PRAC. CIV. APP. § 11:18 (2016) ("*Stetter*")(*citing* La. C.C.P. art. 2133 and *Galle v. Orleans Parish School Bd.*, 623 So.2d 692 (La. App. 4 Cir. 1993)). . . ."[a]n appellee cannot recover damages for taking a frivolous appeal if the damages are first requested in the appellee's brief." *Stetter* § 11:19. "An appellee's brief does not constitute an answer or appeal for purposes of requesting frivolous appeal damages." *Stetter*, § 11:19, (*citing Sears, Roebuck & Co. v. Appel*, 598 So.2d 582 (La. App. 4 Cir. 1992)).[12]

Mr. Lewis failed to file an answer to the appeal or a cross-appeal. Thus, Mr. Lewis' request to be awarded attorney's fees and costs is denied.

## CONCLUSION

The district court's judgment is affirmed. In addition, Mr. Lewis' requests for attorney's fees and costs is denied.

## AFFIRMED

---

[12] La. C.C.P. art. 2133(A) provides in part: "An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." In *Ward v. Schwegmann Giant Supermarkets, Inc.,* 538 So.2d 1051 (La. App. 4th Cir. 1989), this Court explained that a brief submitted by an appellant or appellee does not satisfy the requirement of La. C.C.P. art. 2133.